In re the commitment of Paschall Lee Sanders:

State of Wisconsin, Petitioner-Respondent,

v.

Paschall Lee Sanders, Respondent-Appellant.†

Court of Appeals

*No. 2010AP658. Submitted on briefs June 23, 2011.
—Decided August 23, 2011.*

2011 WI App 125

(Also reported in 806 N.W.2d 250.)

† Petition for review denied 12-1-11.

On behalf of the respondent-appellant, the cause was submitted on the briefs of *Ellen Henak*, assistant state public defender of Milwaukee.

On behalf of the petitioner-respondent, the cause was submitted on the brief of *J.B. Van Hollen*, attorney general and, *Aaron R. O'Neill*, assistant attorney general.

Before Curley, P.J., Fine and Brennan, JJ.

¶ 1. FINE, J.   Paschall Lee Sanders appeals the judgment and order entered on a jury verdict finding that he was "a sexually violent person," and committing him "to the Department of Health Services for control, care and treatment until such time as [he] no longer" was. *See* WIS. STAT. ch. 980. Sanders complains that the jury instructions were flawed even though his trial lawyer did not object to them. *See* WIS. STAT. RULE 805.13(3) ("Failure to object [to the proposed jury instructions] at the [jury-instruction] conference constitutes a waiver of any error in the proposed instructions or verdict."). After Sanders filed his notice of appeal, he sought, and we granted, a remand to the circuit court to, as phrased by our order, "permit him to pursue a post-commitment motion that will raise issues of ineffective assistance of counsel." The circuit court denied his motion for post-commitment relief. Accordingly, his appeal encompasses that order as well. *See* WIS. STAT. § 808.04(8) ("If the record discloses that the judgment or order appealed from was entered after the notice of appeal or intent to appeal was filed, the notice shall be treated as filed after that entry and on the day of the entry.").

¶ 2.  Sanders does not argue on appeal that his trial lawyer gave him constitutionally deficient representation because, relying on *State v. McMahon*, 186 Wis. 2d 68, 85, 519 N.W.2d 621, 628 (Ct. App. 1994) ("We think ineffective assistance of counsel cases should be limited to situations where the law or duty is clear such that reasonable counsel should know enough to raise the issue.), he asserts that his appellate "argument is relatively novel in Wisconsin, the law and counsel's duty were not clear, especially as trial counsel relied upon the standard pattern jury instructions. Thus, a claim of ineffective assistance of counsel is inappropriate." Instead, Sanders wants us to reverse pursuant to WIS. STAT. § 752.35, arguing that "the real controversy has not been fully tried."[1] We affirm.

## I.

¶ 3.  The State filed a petition in August of 2004 alleging that Sanders should be committed under WIS. STAT. ch. 980 as a sexually violent person before he was released from prison for his 1993 conviction of second-degree sexual assault of a child.[2] The jury heard the

---

[1] WISCONSIN STAT. § 752.35 reads in full:

In an appeal to the court of appeals, if it appears from the record that the real controversy has not been fully tried, or that it is probable that justice has for any reason miscarried, the court may reverse the judgment or order appealed from, regardless of whether the proper motion or objection appears in the record and may direct the entry of the proper judgment or remit the case to the trial court for entry of the proper judgment or for a new trial, and direct the making of such amendments in the pleadings and the adoption of such procedure in that court, not inconsistent with statutes or rules, as are necessary to accomplish the ends of justice.

[2] The matter was delayed for various reasons that are not material to this appeal. The jury returned its verdict in Decem-

following evidence, none of which Sanders contends on appeal was erroneously received into evidence.

¶ 4. A Department of Corrections probation and parole agent assigned, as he testified, to "handle cases involved in the Chapter 980 process," told the jury about some of Sanders's criminal history. Sanders was born in 1947, and was convicted in 1974 of sexually assaulting two women. According to the uncontroverted testimony of the agent, Sanders took the first victim to the basement of his aunt's house, "tore the clothing off her body" and forcibly had penis/vagina sexual intercourse. "Following this act, Mr. Sanders placed his erect penis into the rectum of the victim and continued until orgasm, then placed his mouth on the mouth of the victim. . . . Shortly after that, he placed his erect penis into her rectum another time."

¶ 5. The next day, Sanders went to the second victim's home and pointed a "loaded handgun" at her. Sanders made her disrobe and remove a "Tampax from her vagina."

> Then Mr. Sanders placed his mouth on the vagina of his victim. This occurred for approximately 15 minutes.
>
> Approximately five minutes later, Mr. Sanders, placed his mouth on the vagina of the victim, again for another 15 minutes. Mr. Sanders then forced the victim to roll on her stomach, at which point he placed his penis into her anus. Mr. Sanders stole $43 from the purse of the victim. Stayed at the residence. The following morning Mr. Sanders forced the victim to drive to O'Hare airport in Illinois and back to Milwaukee. This was all done at gunpoint.
>
> Mr. Sanders then forced the victim into her apartment. He tied the victim's hands together. He then

ber of 2009 finding that Sanders was a sexually violent person.

removed the victim's clothing and placed his penis into her vagina against her will. Then [he] removed his penis from her vagina before he had an orgasm. Mr. Sanders then placed his penis into the mouth of the victim, at which point he had an orgasm. Mr. Sanders then pointed the gun at the victim's head and forced her to drive him to Monona, Wisconsin.

In Monona, Mr. Sanders left the victim alone in the car for approximately five minutes. Mr. Sanders returned to the car and forced the victim to drive him back to Milwaukee. Once in Milwaukee, they drove to a back alley. Mr. Sanders forced the victim into the back seat of the car. He placed the gun against the victim's chest and told her he was going to shoot her in the heart. He cocked the gun repeatedly, but never shot her. At that point he fled the vehicle.

As a result, Sanders was sent to prison in 1975, ostensibly for twenty years; he was paroled in June of 1976. His parole was revoked in January of 1977 for driving a car without the owner's consent. According to the agent, some two years later, Sanders was sent to prison again, this time for "two counts of armed robbery." He was paroled in 1986. The agent told the jury that "Mr. Sanders' supervision was revoked in 1993 after he absconded from supervision." As noted earlier, Sanders was convicted in 1993 of second-degree sexual assault of a child, the crime that immediately underlies these WIS. STAT. ch. 980 proceedings.[3]

---

[3] As we have seen, the issue on this appeal is whether the case was "fully tried." *See* WIS. STAT. § 752.35. Thus, we have to determine whether the jury had before it all evidence relevant to whether Sanders was "more likely than not" to commit another crime of sexual violence. *See* WIS. STAT. §§ 980.05(3) & (5); 980.02(2)(a)1, (b), & (c); 980.01(1m). Although, as we note in Part II, a person's criminal history is not dispositive on whether he or she is more likely than not to re-offend, and the

¶ 6. The jury also heard from three psychologists, one presented by the State, and two presented by Sanders. We look at their testimony in turn.

¶ 7. The State's psychologist, Dale Bespalec, told the jury that Sanders suffered from:

- "Paraphilia Not Otherwise Specified" and

- "Antisocial personality disorder."

Dr. Bespalec explained the two diagnoses:

> Paraphilias are a category of sexual disorders. They feature enduring patterns recurrent, thoughts, urges or behaviors and fantasies of sexual issues that usually involve non-human [sic] objects, suffering humiliation of one's self or one's partner or children or other non-consenting adults. That is one piece of it.
>
> The second part is that those things have to have occurred; those behaviors, those urges, those behaviors, urges and fantasies have to occur for more than six months within an individual. And then the third piece to that is that they have to cause impairment or distress to the individual.

---

jury was so told, it is nevertheless something that the jury may consider. *State v. Kienitz*, 227 Wis. 2d 423, 428–429, 436, 597 N.W.2d 712, 714–715, 718 (1999) (Trial court was entitled to rely on criminal history "in determining that it was much more likely than not that Kienitz would reoffend."). *See* WIS. STAT. § 980.05(4) ("Evidence that the person who is the subject of a petition under s. 980.02 was convicted for or committed sexually violent offenses before committing the offense or act on which the petition is based is not sufficient to establish beyond a reasonable doubt that the person has a mental disorder."). Thus, we have set out what the jury heard about Sanders's criminal history not to titillate but because it is material whether we should use our discretionary authority to reverse because the matter was "not fully tried."

> [Antisocial personality disorder] is a pervasive pattern of disregard for [*sic* "or"] violation of rights of others. There is often lots of problems failing to conform to social norms, not following typical rules of society, lying, getting involved in physical fights, reckless disregard for safety and numerous other things and that has to occur since age 15. But also, there has to be some evidence of some conduct disorder with onset earlier then 12. So, in other words, it has to be something that looks like it started very early and has continued on through adulthood.

Dr. Bespalec testified that Sanders's juvenile history was consistent with an early onset of antisocial personality disorder. He also told the jury "to a reasonable degree of professional and scientific certainty" that Sanders's antisocial personality disorder and paraphilia predisposed him to "engage in future acts of sexual violence." Noting that Sanders was born in 1947, Dr. Bespalec told the jury that he also considered Sanders's age and concluded that even though Sanders was then sixty-two he "was more likely than not to commit another act of sexual violence" if he were not committed.

¶ 8. The first psychologist to testify for Sanders was Susan Sachsenmaier, who had first evaluated him in 2004 when the State filed the petition. She also evaluated Sanders in 2006 and some twelve days before the trial. Although in 2004 Dr. Sachsenmaier concluded that Sanders "had high risk and did meet the State's threshold of more likely than not to commit another sexually violent offense," she told the jury that she no longer believed that Sanders met that threshold. She explained:

> On the one hand, I have a long history of high psychopathy, antisocial behavior. A lot of criminal acts dating back to ages 11 and 12. Sexual crimes, armed robbery,

239

theft, taking cars without owner's permission, escaping from institutions, trying to jump out of a courthouse window or perhaps falling, although it is difficult to fall out of a window and some malingering of illnesses to try to get off by being not guilty by reason of insanity.

On the other hand, Dr. Sachsenmaier noted that Sanders was then sixty-two and had Hepatitis C. This softened her appraisal despite what she characterized as his "very bad history." She testified:

> So, much as I would like to be able to give you a very firm opinion on which weighs more; the very bad history or the science that says people over age 60 are really not likely to offend, I still see them as balancing each other out. The science doesn't quite, it isn't strong enough to say that even with a very bad history this man is more likely than not to re-offend. Predisposed, yes. But high enough to meet the threshold I cannot quite get there.

She conceded, however, that she still, as she had in 2004, believed that Sanders had paraphilia and an antisocial personality disorder. Further, when asked by the State on cross-examination whether "both of those diagnoses predisposes Mr. Sanders to commit acts of sexual violence," she responded:  "Yes, they do." She had this further colloquy with the State:

Q.  Now, you originally stated that Mr. Sanders met the threshold under Wisconsin's sexually violent persons law. That he was more likely to engage in future acts of sexual violence. Is that true?

A.  Yes, I did, in 2004.

Q.  But, as of today you are stating you are not sure?

A.  That's correct.

240

Dr. Sachsenmaier also agreed with the State that Sanders had:

- a "high degree of sexual deviance,"

- distorted altitudes [*sic* "attitudes"] [that] he has shown about his sexual offending,"

- a history of "sheer violence of his, in his sexual offenses," once by using a gun,

- a "lack of any meaningful sexual offending treatment," and

- "poor behavioral management" "[w]hen he's not under supervision, under direct supervision."

Dr. Sachsenmaier, however, also agreed with Sanders's lawyer that paraphilia and antisocial personality disorder "are conditions which can abate over time."

¶ 9.    Sheila Fields was the second psychologist to testify for Sanders. She also agreed that antisocial personality disorder could abate over time, but was less certain about paraphilia not otherwise specified. And she agreed that Sanders suffered from both antisocial personality disorder and paraphilia not otherwise specified, which, for Sanders, she said, was that he was "sexually aroused to non-consent." Thus, she told the jury:    "I had three interviews with Mr. Sanders and Mr. Sanders was forthcoming with me in saying that what he was being turned on by was the non-consent. That what he was being turned on by was the mixture of his rage and the sexual arousal." Dr. Fields agreed with Dr. Sachsenmaier that she could not say that it was more likely than not that Sanders would commit other crimes of sexual violence, although she concurred with the State's characterization during cross-examination that she was "on the fence" on that question.

241

## II.

¶ 10. The focus of Sanders's appeal is on the degree and nature of a mental illness that requires commitment as a sexually violent person under Wis. Stat. ch. 980. As material, a person who has previously "been convicted of a sexually violent offense" and who "has a mental disorder" that "makes it likely that he or she will engage in acts of sexual violence" is to be committed to the Department of Health Services until that person "is no longer a sexually violent person." Wis. Stat. §§ 980.06; & (5); 980.02(2)(a)1., (b), & (c). " 'Likely' means more likely than not." Wis. Stat. § 980.01(1m). " 'Mental disorder' means a congenital or acquired condition affecting the emotional or volitional capacity that predisposes a person to engage in acts of sexual violence." § 980.01(2). The State has the burden to prove beyond a reasonable doubt that the person is "a sexually violent person." § 980.05(3).

¶ 11. The statute's definition that " 'mental disorder' " means a " 'condition affecting the emotional or volitional capacity that predisposes a person to engage in acts of sexual violence' " is constitutional even though it does not specifically, in so many words, say that the person's "mental disorder involves *serious difficulty* for such person to control his or her behavior" because "evidence showing that the person's mental disorder predisposes such individual to engage in acts of sexual violence . . . distinguishes such a person from the dangerous but typical recidivist." *State v. Laxton*, 2002 WI 82, ¶ 2, 254 Wis. 2d 185, 189–190, 647 N.W.2d 784, 787 (emphasis added); *see also id.*, 2002 WI 82, ¶¶ 21–23, 254 Wis. 2d at 201–204, 647 N.W.2d at 793–794. As we see below, however, the circuit court here included the

words "serious difficulty in controlling behavior" when it defined "mental disorder" for the jury.

¶ 12.   As material, the circuit court instructed Sanders's jury as follows, and we italicize the parts of the instructions about which Sanders complains because the sentences are contradictory:

A petition has been filed alleging that Paschall Sanders is a sexually violent person. A sexually violent person is one who has been convicted of a sexually violent offense and is dangerous to others because he or she currently has a mental disorder that makes it more likely than not that the person will engage in future acts of sexual violence.

. . .

*Mental disorder means a condition affecting the emotional or volitional capacity that predisposes a person to engage in acts of sexual violence and causes serious difficulty in controlling behavior.*

Mental disorders do not include merely deviant behaviors that conflict with prevailing societal standards. Not all persons who commit sexually violent offenses can be diagnosed as suffering from a mental disorder. *Not all persons with a mental disorder are predisposed to commit sexually violent offenses or have serious difficulty in controlling behavior.*

(Emphasis added.)[4] The circuit court also told the jury that the State would have to prove that Sanders "is dangerous to others because he has a mental disorder

---

[4] *State v. Laxton*, 2002 WI 82, ¶ 24 n.14, 254 Wis. 2d 185, 204 n.14, 647 N.W.2d 784, 794 n.14, recognized that even though it was not required, the pattern jury instruction was modified to include the " 'causes serious difficulty in controlling behavior' " phrase. It declined, however, to assess that change

243

which makes it more likely than not that he will engage in one or more future acts of sexual violence." Further, the circuit court told the jury that it was "not bound by medical opinions, labels, or definitions."

¶ 13. As we have seen, we may order a new trial under Wis. Stat. § 752.35 if we conclude that "the real controversy has not been fully tried." *See also Vollmer v. Luety*, 156 Wis. 2d 1, 27, 456 N.W.2d 797, 809 (1990) (Bablitch, J., concurring on behalf of all but one justice). An appellate court may order a new trial on the real-controversy-has-not-been-fully-tried aspect even though it cannot conclude that there would be a different result following a retrial. *State v. Watkins*, 2002 WI 101, ¶ 97, 255 Wis. 2d 265, 309, 647 N.W.2d 244, 264. Further, we may reverse on the real-controversy-has-not-been-fully-tried aspect if a jury "instruction obfuscates the real issue or arguably caused the real controversy not to be fully tried." *See State v. Perkins*, 2001 WI 46, ¶ 12, 243 Wis. 2d 141, 149, 626 N.W.2d 762, 766.

> A trial court has broad discretion in instructing a jury but must exercise that discretion in order to fully and fairly inform the jury of the applicable rules of law. Whether a jury instruction is appropriate, under the given facts of a case, is a legal issue subject to independent review. On review, the challenged words of jury instructions are not evaluated in isolation. Rather, jury instructions "must be viewed in the context of the overall charge." Relief is not warranted unless the court is "persuaded that the instructions, when viewed as a whole, misstated the law or misdirected the jury."

because it was not material to the issues in that case. *Ibid. Laxton* did not comment on the pattern jury instruction's inconsistency. *See ibid.*

*State v. Ellington*, 2005 WI App 243, ¶ 7, 288 Wis. 2d 264, 272, 707 N.W.2d 907, 911 (quoted sources omitted). Thus, jury instructions that, considering the "proceedings as a whole," adequately give to the jury the appropriate legal principles will be upheld even though they may not be phrased with the precision of a mathematical formula or with the elegance of an Edward Gibbon. *See State v. Burris*, 2011 WI 32, ¶¶ 23, 63, 333 Wis. 2d 87, 102, 119, 797 N.W.2d 430, 437, 446 (A "potentially ambiguous instruction" does not warrant reversal when the instruction adequately gives to the jury the applicable legal principles.). We now turn to Sanders's complaints.

¶ 14.   As we have seen, two sentences in what the circuit court told the jury are contradictory:

(1)   *"Mental disorder means a condition affecting the emotional or volitional capacity that predisposes a person to engage in acts of sexual violence* and causes serious difficulty in controlling behavior." (Emphasis added.)

(2)   "Not all persons with a mental disorder are predisposed to commit sexually violent offenses or have serious difficulty in controlling behavior."

As noted earlier, the italicized part of the first sentence tracks WIS. STAT. § 980.01(2) (" 'Mental disorder' means a . . . condition affecting the emotional or volitional capacity that predisposes a person to engage in acts of sexual violence."). The second sentence, although contradictory, gives a needed escape hatch because it recognizes *that not all mentally ill persons* are fixated on sexually violent behavior and have serious difficulty in not acting on that fixation. Thus, the second sentence *helped* Sanders. It made clear that although the statute defined "mental illness" as something that "predisposes

a person to engage in acts of sexual violence," Sanders's mental illness alone was *not* sufficient for the jury to find that he was a sexually violent person. Sanders thus has not shown how the inconsistency prevented the "real controversy" (whether as a result of his paraphilia and antisocial personality disorder, he was a sexually violent person) from being "fully tried." Simply put, the instruction did not prevent him from arguing that his present mental illness did not make him more likely than not to commit further crimes of sexual violence if he were not committed, especially because the circuit court told the jury that Sanders's mental illness had to cause him "serious difficulty" in controlling his behavior.[5] Indeed, his two expert witnesses so testified.

¶ 15. Although Sanders's main focus is on the contradictory sentences in the jury instructions, he also seeks to have us re-write the jury instructions along the lines of a template he suggests. He contends that: (1) even though the circuit court (and the pattern instructions) went beyond what *Laxton* said was consti-

---

[5] The pattern jury instruction for Wis. Stat. ch. 980 matter was revised in 2011 to eliminate the inconsistency, and now reads:

> "Mental disorder" as used here, means a condition affecting the emotional or volitional capacity that predisposes a person to engage in acts of sexual violence and causes serious difficulty in controlling behavior.

> The term "mental disorder" is also used in a more general way by the mental health profession to diagnose and describe mental health-related symptoms and disabilities. Only those mental disorders that predispose a person to engage in acts of sexual violence and cause serious difficulty in controlling behavior are sufficient for purposes of commitment as a sexually violent person.

Wis JI—Criminal 2502 (2011) (footnotes omitted).

246

tutionally necessary by including the "serious difficulty" language, which Sanders concedes was "prudent as well as helpful," the instruction should have given a more "complete explanation" of the concept; and, because it did not, (2) the instruction did not "make clear enough that a person's offense history is not, by itself, sufficient to find a 'mental disorder.'" These contentions are without merit.

¶ 16.  First, although expansion on what the common terms "serious" and "difficulty" mean might not be error, and, indeed, might have been incorporated in the jury instructions if Sanders's trial lawyer had asked for that language, it does not follow, under the appellate-review-of-jury-instructions rubric we have already mentioned, that not further explaining "serious difficulty" meant that the case was not "fully tried." This is especially true because, as we have seen, *Laxton* determined that the "serious difficulty" language was not necessary. Second, the circuit court specifically told the jury that it could not find that Sanders was suffering from a mental illness merely based on his criminal history. The circuit court instructed the jury:

- "Mental disorders do not include merely deviant behaviors that conflict with prevailing societal standards. *Not all persons who commit sexually violent offenses can be diagnosed as suffering from a mental disorder.*" (Emphasis added.)

- "Evidence has been submitted that Paschall Sanders committed other sexually violent offenses before committing the second degree sexual assault of a child. *This evidence alone is not sufficient to establish that Paschall Sanders has a mental disorder.*" (Emphasis added.)

- Despite all the evidence of his history of sexual violence, "[t]he law presumes that Paschall Sanders

247

is not a sexually violent person." The circuit court also told the jury this before the trial started.

The jury had ample guidance to assess whether Sanders had a mental disorder wholly apart from his criminal history, and Sanders's complaint that the jury was free "to use Mr. Sander's [*sic*] offense history alone to conclude that he has a predisposition or has serious difficulty controlling his behavior" is belied by the Record.

¶ 17.  The flaw in Sanders's appellate contentions is revealed by his assertion in his main brief on this appeal, that "the mere likelihood that the person will engage in sexual violence in the future is not the primary issue in a Chapter 980 case." *Au contraire.* As we have already seen, the legislature has commanded judges to commit a person under WIS. STAT. ch 980 if that person is a "sexually violent person." Although Sanders would like us to revise the jury instructions in a way that he contends would be better, his case was "fully tried" under the circuit court's jury instructions; what he concedes are his "relatively novel" contentions do not negate that.

¶ 18.  Sanders also complains that the testimony of his trial experts was insufficiently "focused." Unlike *State v. Hicks*, 202 Wis. 2d 150, 171–172, 549 N.W.2d 435, 444–445 (1996), which reversed a conviction in the "interests of justice" under WIS. STAT. § 751.06 (supreme court may reverse when "the real controversy has not been fully tried") because the "the issue of identification was not fully tried" *in light of the defendant's presentation of after-conviction DNA evidence,* Sanders does not tell us, beyond a largely undeveloped series of speculations, what could have been done differently in presenting his case to the jury, and, significantly, did not either

248

make an offer of proof or present more "focused" testimony following our remand (at his request) to the circuit court for post-commitment proceedings. *Cf. State v. Flynn*, 190 Wis. 2d 31, 48, 527 N.W.2d 343, 349–350 (Ct. App. 1994) (A defendant who alleges that his lawyer was ineffective because the lawyer was deficient in his or her representation must show what the lawyer should have done and how it would have accomplished the result the defendant now seeks.); *State v. Williams*, 2006 WI App 212, ¶¶ 15–17, 296 Wis. 2d 834, 846–847, 723 N.W.2d 719, 725–726 (recognizing that ineffective-assistance-of-counsel claims and claims under Wis. Stat. § 752.35 may be analyzed under similar principles). Thus, Sanders's lack-of-focus argument fails.

¶ 19.   Discretionary reversal is not warranted.

*By the Court.*—Judgment and orders affirmed.

¶ 20.   Curley, P.J.   (*dissenting*). I respectfully dissent. The contradictory definitions of "mental disorder" in Wis JI—Criminal 2502 (2009), the instruction the jury was required to use to determine whether Sanders was a sexually violent person, did not "help" Sanders, nor did they provide him with a "needed escape hatch." Majority, ¶ 14 (emphasis omitted). Rather, the contradictory definitions of "mental disorder" in the instruction obfuscated the primary issue in this case—whether Sanders was simply mentally ill, or whether he had a "mental disorder" that made it more likely than not that he would engage in future acts of sexual violence, *see Perkins, supra,* 243 Wis. 2d 141, ¶ 12; Wis JI—Criminal 2502 (2009). Because the instruction misdirected the jury and confused the issue, I would reverse the trial

court's order and remand for a new trial.[1] *See Ellington, supra,* 288 Wis. 2d 264, ¶ 7; *Perkins, supra,* 243 Wis. 2d 141, ¶ 12.

¶ 21. As the Majority opinion concedes, the jury instruction defines "mental disorder" in contradictory ways.

¶ 22. For example, the introductory paragraph explains that, to commit a person under ch. 980, the jury must determine that the person has a very specific type of mental disorder—"a mental disorder that makes it more likely than not that the person will engage in future acts of sexual violence." Wis JI—Criminal 2502 (2009). In other words, as the Majority has already explained, "mental disorder," as used here, is a legal term of art. *See also* Wis JI—Criminal 2502 n.9 (2011) (" '[M]ental disorder' is used as a term of art in Chapter 980 and has a specific definition."). This legal term of art is more explicitly defined in the second portion of the "elements that must be proved" part of the instruction. For ease of understanding, I include the definition again here:  " 'Mental disorder' means a condition affecting the emotional or volitional capacity that predisposes a person to engage in acts of sexual violence and causes serious difficulty in controlling behavior." Wis JI—Criminal 2502 (2009).

---

[1] The Majority describes for us in painstaking detail the gruesome criminal conduct that led to Sanders's 1974 conviction. Were this case about whether the punishment fit the crime, this information would be helpful. The issue on appeal, however, is whether the instructions given at Sanders's 2009 commitment trial misdirected the jury and confused the issue of whether he had a "mental disorder" as that term is defined in ch. 980. Reciting Sanders's past conduct in graphic and disturbing detail does little to shed light on the issue.

¶ 23. Just a few sentences later, however, "mental disorder" has a contradictory definition: "[n]ot all persons with a mental disorder are predisposed to commit sexually violent offenses or have serious difficulty in controlling behavior." *See id.* Worse, there is no clarifying language to assist the jury in determining which "mental disorder" is the one that warrants commitment under ch. 980. This is of course important because, as Wisconsin law recognizes (and common sense dictates), we do not commit individuals as sexually violent persons simply because they suffer from mental illness.

¶ 24. The Majority concludes that the jury was able to discern the difference between the contradictory definitions; yet, ironically, the Majority is unable to do so itself without utilizing additional clarifying language in its opinion. It repeatedly distinguishes the legal term of art from the contradictory general definition by renaming the general "mental disorder" mental illness. Indeed, the difficulty the Majority—and no doubt the jury—encountered is further highlighted by the most recent version of the jury instruction. This version includes clarifying language "to make it more understandable to the jury and to address an inconsistency in the [2009] version." *See* Majority, ¶ 14 n.4; *see also* Wis JI—Criminal 2502 n.9 (2011).

¶ 25. In Sanders's case, the importance of the distinction between "mental disorder" as a legal term of art and "mental disorder" as a general mental illness is far from purely semantic. Using the given instruction, the jury could have easily confused the legal term of art with the contradictory, general definition of "mental disorder." It could have found Sanders to be a sexually violent person based merely on the fact that he was diagnosed as having an unspecified form of paraphilia and antisocial personality disorder—which would have

been inadequate under the law—instead of determining that his paraphilia and/or antisocial personality disorder: (1) predisposed him to engage in acts of sexual violence, and (2) caused him serious difficulty in controlling behavior such that he was likely to reoffend.

¶ 26. Accordingly, I would reverse and remand for a new trial.