COURT OF APPEALS
DECISION
DATED AND FILED

December 16, 2020

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2019AP886-CR**

Cir. Ct. No. **2016CF421**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT II

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

CHIDIEBELE PRAISES OZODI,

DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Walworth County: KRISTINE E. DRETTWAN, Judge. *Affirmed*.

Before Neubauer, C.J., Reilly, P.J., and Davis, J.

¶1 NEUBAUER, C.J. Chidiebele Praises Ozodi appeals from a judgment convicting him of attempted second-degree sexual assault, operating a vehicle without consent, and disorderly conduct and from an order denying his postconviction motion for a new trial. Ozodi took LSD prior to his actions

supporting the charges. He contends his voluntary intoxication negated his ability to form the requisite intent to commit the charged crimes. He argues the trial court misstated the law when it instructed the jury that Ozodi's voluntary intoxication "is not by itself a defense." Ozodi also argues that the court's allegedly flawed instruction denied Ozodi his constitutional right to present a defense. We disagree. The trial court did not err in providing the jury instruction on voluntary intoxication. Moreover, Ozodi was not precluded from presenting evidence and argument that his voluntary intoxication may have impacted his intent. Accordingly, we affirm.

## BACKGROUND

¶2 The parties do not dispute the material facts, all of which occurred on or near the campus of UW-Whitewater. On October 4, 2016, Ozodi and a friend took LSD. Later on, Ozodi drove his friend's mother's car, crashing it into a tree and fleeing the accident while naked.

¶3 Ozodi ended up near a group of about fifteen female college rugby players who had just finished practice. Some of the women gave him clothes to wear. Ozodi then pushed one of them to the ground and told her that he was going to have sex with her. A male rugby player promptly pushed Ozodi off. Now being pursued by police, Ozodi sprinted through an athletic field, suddenly stopped, pulled down his shorts, sat down, and began masturbating. He was arrested and charged with attempted second-degree sexual assault, operating a vehicle without consent, and disorderly conduct.

*Ozodi's Trial*

¶4    Ozodi entered a plea of not guilty.  A two-day jury trial was held, at which Ozodi presented evidence of his voluntary intoxication and argued that it impacted his ability to form the intent required to commit the charged sexual assault and motor vehicle offenses.[1]  We now discuss the court rulings, key evidence, and the jury instructions that matter to this appeal and to the central issue before the jury, namely, Ozodi's intent.

*Pertinent Trial Court Rulings*

¶5    In a pretrial motion in limine, Ozodi asked the court to allow a witness to testify to her opinion that Ozodi had a good moral character and would not sexually assault anyone.  Ozodi argued that the character evidence was essential to negating the element of intent and that this witness would demonstrate to the jury Ozodi's lack of criminal intent by testifying that Ozodi "is not the kind of person who would intentionally harm another or sexually assault anyone."

¶6    After hearing arguments from the parties on the morning of the trial, the court decided to allow the witness to testify "that [Ozodi] is a good moral person and that he would not harm or sexually assault someone."  In making this

---

[1] At trial, Ozodi conceded he should be found guilty of disorderly conduct, as its elements were met.  Intent is not among them.  *See* WIS. STAT. § 947.01(1) (2017-18) ("Whoever … engages in violent, abusive, indecent, profane, boisterous, unreasonably loud or otherwise disorderly conduct … [tending to] ... provoke a disturbance ….").  As we discuss in depth in the body of this opinion, intent is a necessary element to the other crimes with which Ozodi was charged.  While the concept of voluntary intoxication addresses mental state or state of mind, the parties' arguments largely focus on the element of intent and not knowledge or awareness, and as such, we adopt the same focus.

All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

ruling, the court explained "that under the law whether the defendant had the intent does make the proffered evidence of the defendant's quote, unquote, good character trait relevant to this action." But the witness did not have the foundation to say that Ozodi's admirable reputation permeated the greater community beyond his circle of friends.

¶7 The court further narrowed the scope of the "character testimony" that it would allow at trial. The court explained that "per the law, the defense cannot have this witness offer specific instances of good conduct to support her opinion. However, the state during cross-examination may cross her on specific instances that are inconsistent behaviors with her opinion." The court also ruled the witness could not say "that it was the drugs that made him act this way," though she could describe how strangely and differently Ozodi was acting and that this was not how he normally behaved. As the court explained:

> I will not allow her to give that specific opinion that it was the drugs or it was the alcohol.
>
> First of all, voluntary intoxication is not a defense.
>
> Second, I think that it smacks of jury nullification.
>
> And, third, she's not an expert.
>
> So for all of those reasons I will not allow her to give the opinion that it was the drugs or the alcohol that made him act that way that day.

After making its ruling, the court asked for feedback from the parties and neither party took further issue with the court's ruling.

¶8 At trial, the witness testified that she had known Ozodi for a couple years, that he was normally of strong moral character and not a danger to anyone, and that his behavior after the crash on the day of the incident was very strange

4

and not normal for Ozodi. The State cross-examined the witness regarding the relatively short length of time she had known Ozodi leading up to the day in question and the fact that she was not concerned with Ozodi's health when she saw him after he had taken drugs on that day.

*The Jury Instructions and Voluntary Intoxication Evidence*

¶9 The State requested the following jury instruction explaining that Ozodi's voluntary intoxication was not a defense to the crimes and was not relevant to his knowledge or intent:

> Evidence has been presented which, if believed by you, tends to show that the defendant was voluntarily intoxicated at the time of the alleged offense(s). Voluntary intoxication of any witness may be relevant evidence and may have bearing on the credibility of that witness. However, a defendant's voluntary intoxication is not a defense and cannot be used to show that the defendant lacked the necessary knowledge to commit the alleged offense(s) or that the defendant did not intend to commit the alleged offense(s).

¶10 At the jury instruction conference during a break in the trial, Ozodi challenged the last sentence of the State's proposed instruction, arguing that his voluntary intoxication was relevant to his intent. While acknowledging that the legislature had recently eliminated the statutory defense of voluntary intoxication,[2] he asserted that the change does not prohibit juries from considering whether voluntary intoxication affects state of mind in every case. Suggesting that giving the State's instruction might violate his Sixth Amendment right to present a defense, Ozodi argued that "[t]he defense has a tenable argument depending on the

---

[2] Ozodi's counsel stated that "we are not asking for an instruction on the affirmative defense of involuntary intoxication."

strength of the intoxication evidence that it is relevant to whether the defendant acted with intent or with another required mental state."

¶11 Pointing to the pertinent statute, WIS. STAT. § 939.42, the State argued that "the plain language reading of the statute says that voluntary intoxication is not a defense." Because the evidence showed that Ozodi voluntarily ingested the LSD, the State further argued, "[i]t is not a defense available to [Ozodi] in this case." The State's position was summed up by the prosecutor as follows: voluntary intoxication "can't be used as a defense by a defendant to try to show that they didn't intend or know what they were doing. If that was the reading of the statute, the statute would be moot, it would have no point."

¶12 After hearing argument from both parties, the trial court decided to modify the State's instruction, leaving it intact up to the point that Ozodi found objectionable and replacing the remaining proposed language with the following sentence: "However, a defendant's voluntary intoxication is not by itself a defense." Having done independent research on the issue, the court concluded that there is little guidance available as to what the statutory change means in terms of how to instruct a jury on the subject. Specifically, the court said that:

> There isn't any further legislative or Jury Instruction Committee insight. There isn't any case that's on point looking to this. So, clearly, the legislature intended to remove that absolute—or I should say that affirmative defense as I've already said, but on the other side, the Committee didn't choose to create an instruction saying that voluntary intoxication is not a defense. And we don't have a jury instruction for everything out there that is not a defense. We don't instruct the jury in that regard for the most part.
>
> So my point is I think that both attorneys recognize this is a very gray area.

6

¶13    With the objectionable language removed and the substituted language in place, the court stated that the jury would know that voluntary intoxication was not a defense *by itself*, but it would still be allowed to hear Ozodi present his "case in showing that, yes, there is this voluntary intoxication but look at all these facts and circumstances that negate the mental state in addition to the voluntary intoxication."

¶14    The full intoxication instruction the court gave at trial stated:

> Evidence has been presented which if believed by you tends to show that the defendant was voluntarily intoxicated at the time of the alleged offenses. *Voluntary intoxication of any witness may be relevant evidence* and may have bearing on the credibility of that witness. However, a defendant's voluntary intoxication is not *by itself* a defense.

(Emphasis added.)

¶15    Throughout the trial, Ozodi faced no obstacles in attempting to present his argument that he did not have the requisite intent to commit these crimes, i.e., he was a good person who would not normally commit these crimes, but he was on LSD at the time. As noted above, the trial court allowed Ozodi to have a close friend testify on his behalf. Ozodi also testified, including discussing the LSD experience, about which he had very little recollection. A state lab expert testified to the chemicals in Ozodi's blood, indicating that one who takes LSD can experience the distortion of reality, including hallucinations.

¶16    After the close of the evidence, in addition to giving the voluntary intoxication instruction as set forth above, and other standard instructions, the court instructed the jury that the sexual assault and vehicle charges required elements of intent as follows:

- "[T]he first element of attempted second degree sexual assault requires that the defendant intended to commit the crime of second degree sexual assault."

- "Sexual contact is an intentional touching of the [genitalia].... [I]t must be an intentional touching."

- "Sexual contact also requires that the defendant acted with intent to become sexually aroused or gratified."

- "[Operating a vehicle without consent] is committed by one who intentionally drives or operates any vehicle without the consent of the owner."

¶17 The trial court instructed the jury that "the [S]tate must prove every element of the offense charged beyond a reasonable doubt," including intent. The court also explained to the jury how to consider the element of intent. The court instructed the jury that it "[could] not look into a person's mind to find intent. Intent must be found, if found at all, from the defendant's acts, words, statements, if any, and from all the facts and circumstances in this case bearing upon intent." The court essentially repeated these instructions when discussing the vehicle charge.

¶18 The court also gave Ozodi's counsel leeway to argue intent in closing, where she contended: "[This case is] not about doing weird things. It's about intent.... [L]et's talk about the evidence that shows that he did not intend to do anything to [the assaulted woman]. That he was high, that he was talking, and doing weird things, but that wasn't his intent." "Now what other things did we hear about that we can use to infer intent. Well we've heard a lot about LSD.

8

We've heard that [Ozodi] was naked, that he was running through campus …." Counsel continued:

> If his intent was to have sexual contact, to sexually arouse himself and to gratify himself, wouldn't that be easier if he was naked like he was moments before?... He didn't try to get her away from those people. He didn't. Because that wasn't his intent….
>
> ….
>
> Now you saw the instruction voluntary intoxication in itself is not a defense but it is relevant evidence. It is something you can consider in determining whether or not the state has proven to you beyond a reasonable doubt that [Ozodi] actually intended to have sexual contact. You don't have to disregard that evidence.

¶19     Neither the State nor the court took any issue with this line of argument on Ozodi's behalf. In fact, the State acknowledged Ozodi's intent argument and argued, to the contrary, that "he definitely vocalized that intent when he said I'm going to have sex with [the victim]."

¶20     The jury convicted Ozodi on all counts. He appeals, arguing that the court's voluntary intoxication instruction misstated the law, misled the jury, and violated his right under both the United States and Wisconsin Constitutions to present a defense at trial.[3]

---

[3] Ozodi's postconviction motion asserted that WIS JI—CRIMINAL 140 (burden of proof and presumption of innocence) misstated the "reasonable doubt" standard. Ozodi has abandoned this issue on appeal. *See Johnson v. Cintas Corp. No. 2*, 2011 WI App 5, ¶16 n.7, 331 Wis. 2d 51, 794 N.W.2d 475 (2010) (we do not address ceded, abandoned issues).

## DISCUSSION

*Standard of Review and Applicable Legal Principles*

¶21 The central issue on appeal is whether the trial court erred in its instructions to the jury. We review jury instructions under the well-established erroneous exercise of discretion standard. ***Dakter v. Cavallino***, 2014 WI App 112, ¶33, 358 Wis. 2d 434, 856 N.W.2d 523, *aff'd*, 2015 WI 67, ¶33, 363 Wis. 2d 738, 866 N.W.2d 656 (as long as "the instructions are not erroneous and adequately inform the jury as to the law to be applied, the court's exercise of discretion will be affirmed on appeal"). Trial courts have wide discretion when instructing a jury. *See* ***State v. Langlois***, 2018 WI 73, ¶34, 382 Wis. 2d 414, 913 N.W.2d 812. Discretion must be exercised in order "to fully and fairly inform the jury of the rules of law applicable to the case and to assist the jury in making a reasonable analysis of the evidence." ***State v. Stietz***, 2017 WI 58, ¶12, 375 Wis. 2d 572, 895 N.W.2d 796 (citation omitted). The court's "discretion extends to both choice of language and emphasis." ***State v. Roubik***, 137 Wis. 2d 301, 308, 404 N.W.2d 105 (Ct. App. 1987).

¶22 An appropriate exercise of that discretion entails administering an instruction so long as the instructions as a whole correctly state the law and accord with the facts of the case. ***Weborg v. Jenny***, 2012 WI 67, ¶42, 341 Wis. 2d 668, 816 N.W.2d 191. The question of "whether a jury instruction is a correct statement of the law" is one that we review de novo. ***Id.*** "On review, the challenged words of jury instructions are not evaluated in isolation." ***State v. Ellington***, 2005 WI App 243, ¶7, 288 Wis. 2d 264, 707 N.W.2d 907 (citation omitted). Instructions are to be examined within the context of the overall charge. ***Id.***

*Changes in the Law of Voluntary and Involuntary Intoxication*

¶23 Before we analyze Ozodi's argument, we briefly lay out what Wisconsin law has been and what it is now. Until April 17, 2014, WIS. STAT. § 939.42 (2011-12) stated as follows:

> An intoxicated or a drugged condition of the actor is a defense *only* if such condition:
>
> (1) *Is involuntarily produced* and renders the actor incapable of distinguishing between right and wrong in regard to the alleged criminal act at the time the act is committed; or
>
> (2) Negatives the existence of a state of mind essential to the crime, except as provided in [WIS. STAT. §] 939.24 (3).

(Emphasis added.) Under the old law, voluntary intoxication was a defense if that intoxication negated the existence of the necessary state of mind. *Id.* The current version states as follows:

> An intoxicated or a drugged condition of the actor is a defense *only* if such condition *is involuntarily produced* and does one of the following:
>
> (1) Renders the actor incapable of distinguishing between right and wrong in regard to the alleged criminal act at the time the act is committed.
>
> (2) Negatives the existence of a state of mind essential to the crime.

WIS. STAT. § 939.42 (emphasis added).

¶24 The new statute elevated the condition of being involuntarily intoxicated into the overall main premise of the statute, making involuntary intoxication a general requirement and meaning that this statutory defense now *only* applies if the intoxication was involuntary. Ozodi does not disagree.

11

*Under the Facts of this Case, Ozodi's Objection was Significantly Mitigated, if not Felled, by the Court's Modified Instruction*

¶25 We find no error in the trial court's instructions to the jury as a whole under the facts of this case. *See Weborg*, 341 Wis. 2d 668, ¶42 (we will uphold a trial court's instructions as long as they comport with the law and are supported by the facts of the case).

¶26 Ozodi argues that the trial court's instruction "is not an accurate statement of the law." He argues that "[v]oluntary intoxication can 'by itself' be a defense if the defendant is able to present sufficient evidence to establish that he was unable to form the requisite criminal intent." The State contends that, assuming the law allows consideration of the effect of Ozodi's voluntary intoxication on his intent, the instructions did not relieve the State of the burden to prove intent or limit the jury's consideration of Ozodi's intoxication.

¶27 As a preliminary matter, we agree with the trial court that the interpretation of the statutory change deleting voluntary intoxication as well as related due process considerations is undeveloped in our case law and, we note, on appeal by the parties. Our research indicates that the import of voluntary intoxication on a mental state varies from state to state. According to Professor Wayne LaFave, whether voluntary or involuntary, "[n]early half of the state criminal codes provide either that intoxication is a defense if it negatives a mental state or that it is admissible in evidence whenever relevant to negate an element of the offense charged." 2 WAYNE R. LaFAVE, SUBSTANTIVE CRIMINAL LAW § 9.5(a) n.8 (3d ed. Oct. 2020 update). "The remaining codes are either silent on the question, while the rest assert either that voluntary intoxication is not a defense and/or that evidence of same is not admissible to establish absence of a

12

required mental state." *Id.* The commentator notes this latter position risks violation of a defendant's due process rights.[4]

¶28 However, we agree with the State that we need not decide whether Wisconsin's new statute falls into the latter category for several reasons.[5] Under the new statute, voluntary intoxication is no longer an express statutory "negative defense."[6] At a minimum, the import of the statutory change appears to be that a defendant is not entitled to an instruction that the jury may consider evidence of

---

[4] For example, an instruction that a defendant's voluntary intoxication creates a presumption that all acts that follow are intended, relieving the state of its burden of proof to establish intent beyond a reasonable doubt, could violate a defendant's due process rights. 2 WAYNE R. LAFAVE, SUBSTANTIVE CRIMINAL LAW § 9.5(a) n.25 (3d ed. Oct. 2020 update) (citing *Sandstrom v. Montana*, 442 U.S. 510, 520, 522, 525 (1979) ("[D]ue process … protects the accused against conviction except upon proof beyond a reasonable doubt *of every fact* necessary to constitute the crime with which he is charged." The instruction that "[t]he law presumes that a person intends the ordinary consequences of his voluntary acts" contradicted the instruction that the state must show the defendant acted "purposefully *or knowingly*." (citations omitted)).

[5] Appellate issues should be decided on the narrowest possible grounds. *State v. Castillo*, 213 Wis. 2d 488, 492, 570 N.W.2d 44 (1997). This is particularly applicable here because neither party has adequately addressed the due process implications of the State's proposed instruction and interpretation of the statutory change argued to the trial court.

[6] Both parties recognize that the prior statute provided a "negative defense," for voluntary intoxication, in which the state had the burden to prove intent beyond a reasonable doubt. *See State v. Schulz,* 102 Wis. 2d 423, 429-30, 307 N.W.2d 151 (1981) (if the defense is an attack on an element of the crime, "the state bears the burden of proving this element beyond a reasonable doubt" and when a negative defense is asserted, "the burden of persuasion cannot be placed upon the defendant without violating his right to due process"); *State v. Pettit*, 171 Wis. 2d 627, 640, 492 N.W.2d 633 (Ct. App. 1992) (if a defendant successfully raises a negative defense, "the burden is upon the state to prove beyond a reasonable doubt that defendant's evidence did not negate an element necessary to convict").

By contrast, "[a]n 'affirmative defense' is ... 'a defendant's assertion raising new facts and arguments that, if true, will defeat the plaintiff's or prosecution's claim even if all allegations in the complaint are true." *State v. Watkins*, 2002 WI 101, ¶39, 255 Wis. 2d 265, 647 N.W.2d 244 (citation and emphasis omitted). When a defendant successfully establishes an affirmative defense (satisfies the burden of production), the burden moves to the state to disprove the defense beyond a reasonable doubt. *State v. Austin*, 2013 WI App 96, ¶12, 349 Wis. 2d 744, 836 N.W.2d 833.

voluntary intoxication in determining if the defendant had the requisite mental state. Here, however, rather than simply omitting an instruction on a statutory defense, the court stated the negative, that voluntary intoxication "is not by itself a defense."

¶29     Thus, the question presented, given the State's assumption that evidence of voluntary intoxication is admissible and can be considered to negate intent, is whether the instruction provided otherwise.[7] As discussed above, upon Ozodi's request, the trial court did not instruct the jury, despite the State's request, that Ozodi's voluntary intoxication "cannot be used to show that the defendant lacked the necessary knowledge to commit the alleged offense or that the defendant did not intend to commit the alleged offense." Rather, the court reminded the jury that it heard evidence about Ozodi's voluntary intoxication, that such intoxication of any witness may be relevant evidence, and that such intoxication may bear on a witness's credibility. We disagree with Ozodi that the reference to witnesses would not include Ozodi himself.

¶30     Beyond that, we reject Ozodi's arguments in light of the jury instructions and proceedings as a whole. The instruction that Ozodi's voluntary intoxication was not "by itself" a defense did not create a presumption that Ozodi's actions that followed were also voluntary. Rather, and to the contrary, the instruction counseled that the intoxication without more would not relieve Ozodi of the intent necessary to render his actions criminal, i.e., that the intoxication "by

---

[7] Ozodi asserts that the instruction only allowed the jury to consider the voluntary intoxication with respect to the "credibility of the witnesses, but not as to whether the defendant committed the crimes charged." He asserts that the "jury was told that it *may not* consider voluntary intoxication as it bears upon Ozodi's intent." As explained, we disagree that the instructions as a whole conveyed either directive.

itself" did not excuse his behavior. Ozodi stood in the same shoes as a sober person because an intoxicated person can form intent, but, as discussed next, evidence of his intoxication could be and was considered to negate his intent. Importantly, the instruction did not mention intent or a mental state element in any way. *People v. Stone*, 471 P.3d 1148 (Co. Ct. App. 2020) (nothing in the instruction from which a juror could conclude that a defendant is criminally responsible for his conduct simply as a result of his voluntary intoxication).

¶31    The trial court's additional instructions as well as the evidentiary rulings made clear that voluntary intoxication was relevant and the jury was to consider all the facts and circumstances, that the State had the burden of proof beyond a reasonable doubt on this element (instructions that Ozodi had no objection to), and that Ozodi was not precluded from attempting to factually establish and argue that his intoxicated state negated his ability to form the requisite intent to commit the crimes charged. *See State v. Sanders*, 2011 WI App 125, ¶13, 337 Wis. 2d 231, 806 N.W.2d 250 ("[J]ury instructions that, considering the 'proceedings as a whole,' adequately give to the jury the appropriate legal principles will be upheld even though they may not be phrased" with precision or elegance (citation omitted)).

¶32    We do not see a reasonable likelihood that a jury could be confused or led to believe by the instructions that it was not allowed to consider the evidence that Ozodi did not intend to commit the offenses—his intent was a focal point of the testimony and of the arguments on both sides at trial. *See State v. Burris*, 2011 WI 32, ¶¶45-46, 333 Wis. 2d 87, 797 N.W.2d 430 ("A defendant is entitled to reversal if 'there is a reasonable likelihood that the jury applied the challenged instruction[] in a manner that violates the constitution'" and "[i]t is the defendant's burden to establish a reasonable likelihood that the jury

unconstitutionally applied an instruction." (first alteration in original; citation omitted)).

¶33     Not only did the trial court allow the jury to hear and consider voluntary intoxication testimony from Ozodi's friend, a State lab expert, Ozodi himself, and other witnesses, counsel focused on the issue throughout the trial and in argument.  Ozodi's counsel forcefully argued to the jury about the connection between LSD and his intent and explained that the law allows the jury to consider whether voluntary intoxication negated his intent.  Indeed, as explained by defense counsel in closing argument, while voluntary intoxication "itself is not a defense," it was "relevant evidence."  "It is something you can consider in determining whether or not the [S]tate has proven to you beyond a reasonable doubt that [Ozodi] actually intended to have sexual contact.  You don't have to disregard that evidence."  The State's arguments confirmed that position.

¶34     In short, we do not agree with Ozodi's suggestion that there existed a reasonable likelihood that the jury understood the instruction to relieve the State of its burden of proof as to a statutory element—that the jury would believe that if Ozodi was intoxicated, he was criminally responsible for what followed regardless of his intent.  The trial court did not err in giving the instruction.

*Ozodi's Claimed Denial of a Constitutional Right to Present a Defense Fails*

¶35     Finally, Ozodi makes conclusory references to being denied his constitutional right to present a defense but offers nothing more than his own bare assertions in support of this argument.  Whether the defendant has been denied the right to present a defense is an issue of constitutional due process we review independently.  *See* **State v. Prineas**, 2012 WI App 2, ¶15, 338 Wis. 2d 362, 809 N.W.2d 68 (2011).

16

¶36    Ozodi suggests that the trial court's instructions effectively precluded him from establishing that his intoxicated state negated his intent to commit the crimes, in violation of his due process right to present a defense. Our United States Supreme Court has stated as follows:

> "Our cases establish, at a minimum, that criminal defendants have the right to the government's assistance in compelling the attendance of favorable witnesses at trial and the right to put before a jury evidence that might influence the determination of guilt." Few rights are more fundamental than that of an accused to present witnesses in his [or her] own defense. Indeed, this right is an essential attribute to the adversary system itself.

> "We have elected to employ an adversary system of criminal justice in which the parties contest all issues before a court of law. The need to develop all relevant facts in the adversary system is both fundamental and comprehensive. The ends of criminal justice would be defeated if judgments were to be founded on a partial or speculative presentation of the facts. The very integrity of the judicial system and public confidence in the system depend on full disclosure of all the facts, within the framework of the rules of evidence. To ensure that justice is done, it is imperative to the function of courts that compulsory process be available for the production of evidence needed either by the prosecution or by the defense."

> ….

> "The right to offer the testimony of witnesses, and to compel their attendance, if necessary, is in plain terms the right to present a defense, the right to present the defendant's version of the facts as well as the prosecution's to the jury so it may decide where the truth lies. Just as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, he [or she] has the right to present his [or her] own witnesses to establish a defense. This right is a fundamental element of due process of law."

17

*Taylor v. Illinois*, 484 U.S. 400, 408-09 (1988) (citations omitted); *see also* 9 CHRISTINE M. WISEMAN AND MICHAEL TOBIN, WISCONSIN PRACTICE SERIES: CRIMINAL PRACTICE & PROCEDURE § 17:27 n.3 (2d ed. Aug. 2020 update).

¶37    As we explain above, Ozodi was allowed to present evidence of his intoxication and argue that it showed he did not have criminal intent, eliciting testimony about his strange behavior and statements, explaining that he normally was not a danger to women, and questioning an expert about the effects of LSD. Ozodi's counsel also discussed the intoxication's effect on Ozodi's intent in both her opening statement and in closing argument she specifically advised the jury that it could consider Ozodi's intoxication when determining if the State had proved that he acted intentionally.   Ozodi was allowed to fully present the evidence that he wished, and the jury was not precluded from considering that evidence as it pertained to his intent.

## CONCLUSION

¶38    We conclude that the trial court's jury instruction on voluntary intoxication was not a misstatement of the law or confusing to the jury.  The court did not err in instructing the jury.  The court did not deprive Ozodi of his constitutional right to present a defense.  Therefore, we affirm.

*By the Court.*—Judgment and order affirmed.

Not recommended for publication in the official reports.