STATE of Wisconsin, Plaintiff-Respondent,

v.

Orville E. BOOTH, Defendant-Appellant.

Court of Appeals

*No. 87–2477–CR. Submitted on briefs August 30, 1988.—
Decided October 26, 1988.*

(Also reported in 432 N.W.2d 681.)

For the defendant-appellant the cause was submitted on the briefs of *Richard D. Martin,* assistant state public defender.

For the plaintiff-respondent the cause was submitted on the brief of *Donald J. Hanaway,* attorney general, and *Gregory M. Posner-Weber,* assistant attorney general.

Before Dykman, Eich and Sundby, JJ.

EICH, J.   Orville E. Booth appeals from a judgment convicting him of felony theft, sec. 943.20(1)(a), Stats. The issue is whether Booth is entitled to a new trial because of the trial court's "inadequate response" to a communication from the jury during deliberations. We see no error and affirm the conviction.

The facts are not in dispute. Booth and another man, Charles Moline, were charged with stealing several truck tires from a Madison dealer on June 2, 1986. Booth, who resided in Illinois, acknowledged that he was present at the scene of the theft, but maintained that he had accompanied Moline to the site not knowing that any theft was intended, and that as soon as he realized what was occurring he insisted

on leaving. At one or two points in his testimony, Booth noted his unfamiliarity with Madison and the surrounding area. At another point, he was asked by the prosecutor whether he had been in Madison on a specific date earlier that year. He responded that he had not, and that he did not know whether he had been in Madison at any time before June 2: "I would not know. I mean, if I'd been here, it had been a long time ago." Finally, both the prosecutor and defense counsel commented briefly on Booth's lack of knowledge of Madison area streets during their closing arguments to the jury.

At the close of the testimony, after the jury had been deliberating for slightly more than two hours, the presiding juror sent a note to the court stating: "A member of the jury believes that the juror may possibly have seen the [defendant] in the City of Madison last summer and so advised the jury. The juror does not believe it has affected the juror's thinking on the trial. Request instructions."

The prosecutor suggested that the court simply advise the jury to continue its deliberations, and Booth's attorney requested that the jurors be told that Booth had been in Madison several times during the summer of 1986 for various court appearances in connection with the charge for which he was being tried. When the prosecutor objected that this would involve placing matters not in evidence before the jury, the court decided to send a simple statement to the jury room: "Consider only the testimony and/or exhibits received on this trial. Continue your deliberations."

Two hours later, the jury again contacted the judge, this time indicating they had "reached a deadlock" and asking for "instructions." The court

again told them to continue deliberating. Twenty minutes later the jury sent out another note stating that it "[did] not believe it [could] reach a unanimous verdict" and again requested instructions. The court responded by reading the "Allen" or "dynamite" charge, Wis J I—Criminal 520 (1985), and after deliberating for another two hours, the jury returned a guilty verdict.

The state argues first that Booth waived any defect in the court's response to the jury's first communication by not objecting to its content before it was sent to the jury room. It is well-settled that "[f]ailure to timely object to jury instructions is waiver of alleged defects in the instructions." *State v. Zelenka,* 130 Wis. 2d 34, 44, 387 N.W.2d 55, 59 (1986). And the supreme court has told us that in the absence of an objection, only that court, not this one, has any authority to go beyond such a waiver. *State v. Schumacher,* 144 Wis. 2d 388, 409, 424 N.W.2d 672, 680 (1988).

We need not even begin that hazardous trek, however, for Booth does not challenge the content of the court's response to the jury communication. Indeed, he concedes, as he must, that it was a correct statement of the law—that juries are required to decide cases on the basis of the evidence of record. Rather, his argument is that the court, given the representations made in the presiding juror's note, was obligated to provide the jury with additional factual information so that it would not be misled by one juror's recollection of having seen Booth in Madison earlier that summer. He characterizes that obligation as "an absolute duty" to inform the jury that there was an "innocent explanation" for his presence in Madison on other occasions earlier that

summer, citing *Austin v. Ford Motor Co.,* 86 Wis. 2d 628, 273 N.W.2d 233 (1979), *Peot v. Ferraro,* 83 Wis. 2d 727, 266 N.W.2d 586 (1978), and *Lorenz v. Wolff,* 45 Wis. 2d 407, 173 N.W.2d 129 (1970).

The only relevancy claimed for *Austin* and *Peot* is that in those cases the court stated that trial courts should inform juries of legislatively-mandated limits on certain damages. In *Lorenz,* the plaintiff sued for damages for personal injuries suffered in an automobile accident. He had a seizure the evening before the last day of the trial and did not appear in court on that day. The trial court refused to allow any explanation of the plaintiff's absence to the jury and also declined to permit plaintiff's counsel to reopen the case to present evidence that his absence resulted from a seizure of the type he asserted was occasioned by the accident. The supreme court concluded that the trial court did not abuse its discretion in failing to permit the plaintiff to reopen the case, but ruled that it was error to deny the request to explain his absence to the jury. The court saw no prejudice in the denial, however. It considered the error to be merely one factor among many "which could properly be considered in ordering a new trial in the interest of justice, although in the instant case the incident was insignificant when compared with the case as a whole." *Id.,* 45 Wis. 2d at 427, 173 N.W.2d at 139.

Taken individually or together, we do not see any of the three cases as imposing or even suggesting the duty Booth claims here. We believe the court's duty upon receiving a question or request from the jury is better stated in another case cited by Booth, *Davis v. Greer,* 675 F.2d 141 (7th Cir.), *cert. denied,* 459 U.S. 975 (1982). It is a duty "to respond [to the inquiry] with

sufficient specificity to clarify the jury's problem." *Id.* at 145.

In this case, the trial court elected to respond to the jurors' communication by reinstructing them in writing on their duty to arrive at a decision based solely on the evidence received at trial. In its earlier instructions at the close of the evidence, the court admonished the jurors that they were to consider "only the evidence received during this trial and the law as given ... by these instructions, and from these alone ... reach your verdict." The court also instructed them that they were "to decide the case solely on the evidence offered and received at trial," and that anything they "may have seen or heard outside the courtroom is not evidence." These instructions were also reduced to writing and were available to the jury during deliberations.

■ When faced with claims of error in the jury instructions, we consider them as a whole, not in "artificial isolation." *State v. Vick,* 104 Wis. 2d 678, 691, 312 N.W.2d 489, 495 (1981), quoting *Cupp v. Naughten,* 414 U.S. 141, 146–47 (1973). Indeed, recognizing that the instructions constitute only one component of a many-faceted trial process culminating in the jury's verdict, we consider claimed instructional errors "in the context of the entire trial." *Zelenka,* 130 Wis. 2d at 49, 387 N.W.2d 61. In context, the effect of the court's response to the presiding juror's note was to admonish the jury to disregard the individual juror's comment, and we believe it adequately "clarif[ied] the jury's problem." *Davis,* 675 F.2d at 145.

Booth also argues that because the presiding juror's note indicated that one of the other jurors had communicated information to the rest of the jury, the

"juror misconduct" or "verdict impeachment" cases, notably *After Hour Welding v. Laneil Management Co.,* 108 Wis. 2d 734, 324 N.W.2d 686 (1982), compel reversal. We disagree.

In cases where a party attempts to impeach a jury verdict on grounds that outside influence or extraneous prejudicial information has been improperly brought to bear on members of the jury, the court must determine whether the evidence of such "misconduct" (a) is competent, (b) shows substantive grounds to overturn the verdict, and (c) shows resulting prejudice. *After Hour Welding,* 108 Wis. 2d at 738, 324 N.W.2d at 689. It is on the last element that Booth's argument fails.

Booth suggests that the "harmless error" test of *State v. Dyess,* 124 Wis. 2d 525, 370 N.W.2d 222 (1985), is applicable to determine whether the juror's remark in this case was prejudicial, and we agree. In *Dyess,* the court stated the test as "whether there is a reasonable possibility that the error contributed to the conviction." *Id.* at 543, 370 N.W.2d at 231–32. The *Dyess* court defined "reasonable possibility" as "a 'probability sufficient to undermine confidence in the outcome' of the proceeding." *Id.* at 545, 370 N.W.2d at 232, quoting *Strickland v. Washington,* 466 U.S. 668, 694, *reh'g denied,* 467 U.S. 1267 (1984).

Booth argues that we should find prejudice in this case because of the importance of his credibility to his defense of the state's "circumstantial" case. He asserts that the juror's remark "unfairly tarnished" his credibility, and that this is enough to establish a "reasonable possibility that the error contributed to the conviction" within the rule of *Dyess.* We conclude to the contrary.

214

With respect to the effect of the juror's remark on Booth's credibility, he has referred us to only three places in the record where he made any statement as to his lack of familiarity with Madison. At one point he stated that he was not familiar with the city and, at another, that he did not know the roads he and Moline took on the night in question. He also stated that he did not know where downtown Madison was, except that it was in "the Capitol area." Finally, responding to one of the prosecutor's questions, he remarked that he "would not know" whether he had been in Madison prior to June 2, 1986, and, if he had, "it had been a long time ago."

Considering these brief remarks in the context of a two-day trial in which the testimony alone covers nearly 500 pages of transcript, we do not share Booth's view that the juror's observation that he thought he had seen him in Madison in the "summer" of 1986 prejudicially impugned his credibility. Nor do we believe that the even briefer references to Booth's unfamiliarity with Madison in the attorneys' closing arguments—arguments which comprise an additional ninety-three pages of transcript—suggest that he suffered any prejudice to either his credibility or his defense to the charge.

■

Booth's defense, in a nutshell, was that he believed he was going to be driven back to Rockford when he entered Moline's van in a restaurant parking lot in the early morning hours of June 2, and that he had no idea he was about to become involved in a theft until they turned off the main roads onto a dirt path and came upon a stack of twenty or thirty truck tires, which Moline began to load into the van. At that time, according to Booth, he attempted to extricate himself

from the theft. Given the nature of the evidence and Booth's defense, and considering also the length of the trial, the brief references to his unfamiliarity with Madison streets must be considered peripheral at best. As a result, the effect of the juror's remark would be minimal even in the absence of the court's repeated admonitions that the jurors should arrive at their verdict solely on the evidence received at trial. With those admonitions, we see no prejudice whatsoever.

In *State v. Kennedy,* 105 Wis. 2d 625, 641, 314 N.W.2d 884, 891 (Ct. App. 1981), quoting *Roehl v. State,* 77 Wis. 2d 398, 413, 253 N.W.2d 210, 217 (1977), we recognized that "possible prejudice to a defendant is presumptively erased from the jury's collective mind when admonitory instructions have been properly given by the court." We assume that "a properly given admonitory instruction [will be] followed." *State v. Pitsch,* 124 Wis. 2d 628, 645 n.8, 369 N.W.2d 711, 720 (1985), quoting *State v. Leach,* 124 Wis. 2d 648, 673, 370 N.W.2d 240, 253 (1985). As we have said, the court's response to the communication, considered in context with the jury instructions, told the jury what it could consider in reaching its verdict and what it could not; and the juror's remark was plainly in the latter category. In *After Hour Welding,* the case upon which Booth places his principal reliance, the court stated that "[j]ury verdicts are not to be impeached easily, nor are they to be questioned without clear and convincing proof that extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror." *Id.,* 108 Wis. 2d at 744, 324 N.W.2d at 692. There is no such proof in this case.

216

We have held that the trial court did not err by responding to the jury's communication in the way that it did. Even if error were to be found, however, there was no prejudice for we see no reasonable possibility, given the court's admonitions to the jury and the circumstances of the trial itself, that either the juror's remark or the manner in which the court responded to the presiding juror's note contributed to the verdict. Under those circumstances, there is nothing in either of those events that undermines our confidence in the jury's resolution of the case. It follows that Booth's "juror misconduct" argument—which is based on the prejudice resulting from the juror's remark—must be rejected as well.

*By the Court.*—Judgment affirmed.