STATE of Wisconsin, Plaintiff-Respondent,

v.

Anthony L. PRINEAS, Defendant-Appellant.

Court of Appeals

*No. 2010AP2154. Submitted on briefs August 16, 2011.
—Decided December 14, 2011.*

2012 WI App 2

(Also reported in 809 N.W.2d 68.)

363

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Robert R. Henak* of *Henak Law Office, S.C.*, Milwaukee.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James M. Freimuth*, assistant attorney general, and *J.B. Van Hollen*, attorney general.

Before Brown, C.J., Neubauer, P.J., and Reilly, J.

¶ 1. NEUBAUER, P.J.   Anthony L. Prineas appeals from a trial court order and a supplemental order

denying his motion for postconviction relief. Prineas was convicted of two counts of sexual assault following a jury trial. The primary dispute at trial was whether the sexual contact between Prineas and the complainant, KAC, was consensual. Although KAC testified that she repeatedly told Prineas "no" and that she wanted to leave, the court excluded on hearsay grounds Prineas' testimony of what KAC said during the encounter. We conclude the evidence was erroneously excluded. The evidence of KAC's alleged remarks to Prineas made during the sexual contact was not hearsay because, pursuant to WIS. STAT. § 908.01(4)(a) (2009–10),[1] KAC was the declarant, testified at trial, and was subject to cross-examination concerning the statements. Even if KAC's statements were hearsay, they were admissible under the "state of mind" exception to the hearsay rule, pursuant to WIS. STAT. § 908.03(3). The exclusion of such evidence was error and denied Prineas due process and his constitutional right to present a defense. Prineas is entitled to a new trial. We therefore reverse and remand for further proceedings consistent with this decision.

## BACKGROUND

¶ 2.  This case arose from an encounter between Prineas and KAC[2] in the basement of a fraternity house at the University of Wisconsin-Whitewater on April 25, 2004. The residents of the fraternity were hosting a party that night. Both Prineas, who had once been a member of the fraternity, and KAC attended the party,

---

[1] All references to the Wisconsin Statutes are to the 2009–10 version unless otherwise noted.

[2] The State represents that the complainant requests the use of her initials instead of her first name and last initial. We therefore refer to her as KAC.

and both were drinking. Based on KAC's account of the events that evening, the State filed an Information charging Prineas with six counts of second-degree sexual assault alleging three acts of penis to vagina intercourse in various positions (Counts 1 through 3), followed by one act of penis to anus intercourse (Count 4), followed by another act of penis to vagina intercourse (Count 5), and finally, one act of penile ejaculation (Count 6), all by use of force. Prineas did not dispute that he had sexual intercourse with KAC during the party; however, he disputed the number and variation of sexual acts that occurred and whether the acts were consensual. The case proceeded to trial on November 1, 2004. The primary issue was consent. There were no witnesses to the encounter. Both KAC and Prineas testified, as did Sexual Abuse Nurse Examiner Patricia Stephan.

### KAC's Trial Testimony

¶ 3.  KAC testified that at approximately 3:30 a.m., she went to the basement of the fraternity house to call her mother because the music in the upstairs area was loud and she would have been unable to hear. KAC was in the game room portion of the basement when she heard someone calling her name. She encountered Prineas, who she had not yet met, coming around the corner. KAC testified that Prineas invited her to see the rest of the basement, which included the chapter room. When she and Prineas entered the chapter room, Prineas "shut the door and turned the light off." KAC testified that the room was "pitch black."

¶ 4.  KAC testified that Prineas held his hand over the light switch and told her to undress. KAC thought Prineas was joking until he said, "No, bitch, I'm not kidding. Take your clothes off." Prineas then grabbed her from behind and kept one arm around her as he

366

undressed her with his free hand. KAC testified that she attempted to free herself, swore at Prineas and told him "no" and that she wanted to leave. In response, Prineas told her to "shut up" and "no." She testified that when she realized Prineas "wasn't going to stop," she asked him to "please at least wear a condom."

¶ 5. KAC testified as to six separate sexual acts, during which she was physically restrained by Prineas.

*Count 1.* KAC testified that Prineas pushed her down over one of the chairs in the chapter room and, with his arm still around her in "a firm grip," engaged in penis to vagina intercourse for "a few minutes."

*Count 2.* KAC testified that Prineas then "grabbed both [her] arms and pulled [her] down to the ground." He held her down with her back against the floor, and again engaged in penis to vagina intercourse. He told her "it wasn't working for him."

*Count 3.* KAC testified that Prineas "sat [her] up and had [her] turn over . . . on her hands and knees." He "put his arm around [her] abdomen again so [she] couldn't move." He engaged briefly in penis to vagina intercourse while "smacking" her buttocks.

*Count 4.* KAC testified that Prineas then "pushed [her] flat on [her] stomach" and, while keeping one hand on her back, engaged in penis to anus intercourse for "a few more minutes." KAC testified that she was not "fighting him" at that time but was "verbally telling him 'no.' "

*Count 5.* KAC testified that Prineas turned her back over onto her back and again engaged in penis to vagina intercourse.

*Count 6.* KAC said Prineas then sat on top of her ribcage and "ejaculated on [her] chest."

KAC testified that she then heard Prineas get dressed. He "flipped the light on," thanked her, told her to take her time getting ready, and walked out. KAC used her bra to wipe the semen off her chest, got dressed, "looked around for a condom wrapper," and then went upstairs to tell her friends she needed to leave. KAC testified that during the alleged assaults she repeatedly told Prineas "no" and that she wanted to leave.

*Prineas' Trial Testimony*

¶ 6.  Prineas' account differed from KAC's both in number and type of sexual interactions. Prineas testified that he introduced himself to KAC in the upstairs apartments of the fraternity house. He testified to the exchange as follows:

> I said, "Hi, I'm Antony [sic]." She said, "Hi, I'm [KAC]." I said, "I hope we can get to know each other better later." She said, "Why wait?" I said, "Okay. Would you like to come with me?" She said, "Yeah."

The State objected to Prineas' account on hearsay grounds, and defense counsel responded that it was not being offered to prove the truth of the matter asserted. The court allowed it for the limited purpose of laying the foundation for what happened next. Prineas testified that he and KAC went down to the basement together, went into the game room and "started making out on the couch." They thought they heard somebody coming down the stairs and Prineas asked KAC if she wanted to go in another room; she replied "yes." Prineas testified that they went into the chapter room and KAC asked Prineas if he had protection. He said he did; she said okay. At this time, the court struck the testimony as hearsay.[3]

---

[3] The exchange was as follows:

¶ 7. Prineas testified that he started taking his clothes off and KAC started taking her clothes off; he put on a condom. When asked what happened next, he stated: "I tried to vaginally penetrate her standing up. She said it couldn't work, and she asked if I wanted to do it on the floor." Again, the State moved to strike, and the court granted the motion on hearsay grounds. After a conference between Prineas and his counsel, Prineas resumed his testimony, stating: "We attempted to . . . have sex standing up, leaning over a chair. It wasn't working, so we consensually went to the floor." The State objected and the court then struck the word "consensually." Prineas testified that KAC went down to her hands and knees, he entered her vaginally from behind, and "was spanking her while [he] was having sex with her." He stated: "Then we switched positions. I laid on my back, and she got on top of me." This lasted three to five minutes until KAC laid on her back and Prineas "entered her vaginally, traditional way."

¶ 8. When asked what happened next, Prineas said he was not sure how to answer "without going back into hearsay." He proceeded to testify that KAC "laid on her back, and I got on top of her" and, after asking permission and receiving her consent, "put my penis between her breasts while she held her breasts." They were in that position for a "couple of minutes" before

[Defense Counsel]: And what did you do when you got in the chapter room?

[Prineas]: As soon as we got in the chapter room, she asked me if I had protection. I said, yes. She said, okay.

[State]: Objection, again, hearsay.

The Court: Yep, that clearly is hearsay and does not explain—

[State]: Move to strike.

The Court: —why they did what they did. Strike. Jury disregard.

Prineas ejaculated on KAC's chest. Prineas testified: "I got up, put my clothes on, and left the room." He denied having told KAC to take her time getting cleaned up or aiding her in getting cleaned up.[4] Prineas testified that he went back upstairs and rejoined a card game with his friends. Prineas denied any protestations by KAC during the encounter and denied any attempt to penetrate her anally.

¶ 9.    Stephan, the nurse who examined KAC the day after the alleged assault, testified that there was bruising on KAC's back and buttocks, an abrasion on her thigh, a laceration on her labia majora and an abrasion to her labia minora. KAC told Stephan that the bruising to her back occurred when she was "thrown to the floor" and that the hand-shaped bruise on her buttock occurred when Prineas slapped her. The physical examination disclosed no anal trauma to KAC. Stephan testified that the anus is less "friable" or more "toughened" than the vagina. Stephan testified "to a reasonable degree of professional and medical certainty" that the the labial abrasion was consistent with intercourse that occurred by force; however, she could not answer whether the injuries might also be consistent with vigorous consensual intercourse.

---

[4] Prineas did indicate that there was some conversation before he went upstairs; however he was not permitted to testify as to the substance of the conversation when asked to do so in a juror question. When the jury left the courtroom, the following exchange occurred:

> The Court:    . . . . Now, back to the following. I am going to ask this question again. What did you say to her after the event before you went upstairs? And you may answer in full context; that, what she said to you, what you said to her, etcetera. Go ahead.

> [Prineas]:    She said, "Do you have anything to clean me off with?" I responded that I did not, and that was the extent of the conversation.

¶ 10.   On November 4, 2004, the jury acquitted Prineas of Counts 1 through 4 but convicted him of Counts 5 and 6. Prineas was subsequently sentenced to ten years' initial confinement followed by ten years of extended supervision on Count 5 and a concurrent term of thirty years' probation on Count 6.

## Postconviction Proceedings

¶ 11.   Prineas pursued a postconviction motion and a direct appeal in which he challenged the trial court's denial of his counsel of choice and the ineffectiveness of his trial counsel, Joseph Cardamone. Following an evidentiary hearing and argument, the trial court denied Prineas' motion on July 30, 2007. We affirmed on February 4, 2009. *See State v. Prineas*, 2009 WI App 28, 316 Wis. 2d 414, 766 N.W.2d 206. Prineas did not raise, and our decision did not address, the due process/right to present a defense issue he raises now.

¶ 12.   On June 16, 2010, Prineas filed the WIS. STAT. § 974.06 motion which forms the basis for this appeal.[5] He raised three arguments:   (1) the trial court's exclusion of Prineas' testimony regarding alleged remarks made by KAC during the encounter denied him due process and the right to present a defense, (2) trial counsel was ineffective for not making a proper objection to the exclusion of that evidence, and (3) postconviction counsel was ineffective for not raising these claims on direct appeal. Prineas' trial counsel testified at the § 974.06 motion hearing as to additional

---

[5] The State acknowledges that ineffective assistance of postconviction/appellate counsel on direct appeal provides a sufficient reason to permit review of the merits of Prineas' WIS. STAT. § 974.06 motion on grounds for relief, despite having already pursued a direct appeal.

remarks attributable to KAC that Prineas would have testified to but for the trial court's exclusion of the remarks as "hearsay." Prineas would have testified that (1) upon entering the chapter room, KAC asked Prineas to make sure the door was locked; (2) after he had entered KAC vaginally from behind and spanked her, and after they had switched positions so KAC was straddling him as he was lying on the floor, Prineas asked KAC if she wanted to switch positions again and she responded "yes," so they went to the missionary position; and (3) after the encounter, KAC asked Prineas not to tell anyone.

¶ 13. Following the evidentiary hearing and argument, the trial court denied the motion in an oral ruling and issued an order to that effect on August 19, 2010. The court subsequently issued a supplemental written decision and order on September 2, 2010. The court determined that, despite failing to argue for the admission of KAC's remarks, trial counsel's performance was not deficient and Prineas failed to demonstrate prejudice as required by *Strickland v. Washington*, 466 U.S. 668, 694 (1984). Prineas appeals.

## DISCUSSION

¶ 14. The issue on appeal is whether the exclusion of Prineas' testimony as to KAC's remarks during the sexual encounter denied him due process and the right to present a defense. Prineas contends that KAC's remarks (1) were not hearsay; (2) were not excludable under Wis. Stat. §§ 908.01(4)(a) or 906.13; and (3) were admissible as statements of her present state of mind, emotion or belief under Wis. Stat. § 908.03(3). We agree that the statements were admissible.

¶ 15. The admission of evidence is generally reviewed for erroneous exercise of discretion. *State v. Guzman*, 2001 WI App 54, ¶ 19, 241 Wis. 2d 310, 624 N.W.2d 717. However, whether the exclusion of evidence denies an accused the right to present a defense is a question of constitutional due process and is determined by this court. *State v. St. George*, 2002 WI 50, ¶¶ 16, 38, 52, 252 Wis. 2d 499, 643 N.W.2d 777.

**■**

¶ 16. Prineas was charged with second-degree sexual assault under WIS. STAT. § 940.225(2)(a), which provides that whoever "[h]as sexual contact or sexual intercourse with another person without consent of that person by use or threat of force or violence" is guilty of a Class C felony. "Consent" is defined by § 940.225(4) as "words or overt actions by a person who is competent to give informed consent indicating a freely given agreement to have sexual intercourse or sexual contact." "In the context of sexual assault, consent in fact requires an affirmative indication of willingness. A failure to say no or to resist does not constitute consent in fact." *State v. Long*, 2009 WI 36, ¶ 31, 317 Wis. 2d 92, 765 N.W.2d 557. Here, the central issue at trial was consent. The State concedes that Prineas was entitled to show—in accordance with the rules of evidence and his constitutional right to present a defense—that KAC made statements evidencing her consent to the sexual contact. Therefore, it is undisputed that the evidence regarding KAC's remarks to Prineas meets the threshold requirement of relevancy under WIS. STAT. § 904.01, meaning that the evidence has a "tendency to make the existence of any fact that is of consequence to the determination of the action more

probable or less probable than it would be without the evidence."

*KAC's Remarks were not Hearsay and were also Admissible under the State of Mind Exception.*

¶ 17.   Prineas contends that KAC's alleged remarks reflecting her consent to the sexual activity at issue, as related by Prineas, are not hearsay because they met the requirements for admissibility as prior inconsistent statements under WIS. STAT. § 908.01(4)(a). He further contends they were admissible under the hearsay exception for statements of present state of mind, emotion, or belief under WIS. STAT. § 908.03(3). Although employing a different analysis, the State agrees that, if properly handled, the statements were admissible.[6] We similarly conclude that these provisions provide avenues for the admission of Prineas' testimony as to KAC's alleged statements.

¶ 18.   WISCONSIN STAT.  § 908.01(4)(a)1. provides that prior statements by a witness are not hearsay if "[t]he declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is . . . [i]nconsistent with the declarant's testimony." Prior inconsistent statements under this provision are not hearsay and are admissible as

---

[6] The State acknowledges, "If properly handled, testimony from Prineas about KAC's alleged remarks to him may have been admissible to show her consent to the sexual activity under the 'state of mind' hearsay exception set forth in WIS. STAT. § 908.03(3) or the 'prior inconsistent statement' provision set forth in WIS. STAT. § 906.13(2)(a)."

Notably, the trial court, in its postconviction ruling, recognized the possible application of the "state of mind" exception to the hearsay rule, WIS. STAT. § 908.03(3).

substantive evidence and not merely to impeach. RALPH ADAM FINE, FINE'S WISCONSIN EVIDENCE ch. 908 at 319 (2d ed. 2008); *see also State v. Horenberger*, 119 Wis. 2d 237, 247, 349 N.W.2d 692 (1984). Although the State does not address § 908.01(4)(a), it acknowledges that the statements were inconsistent and admissible as substantive evidence—that KAC consented to the alleged sexual activity. It is also undisputed that KAC testified at trial, was subject to cross-examination concerning the statements, and was available and subject to subpoena after Prineas testified. *See State v. Miller*, 231 Wis. 2d 447, 470–71, 605 N.W.2d 567 (Ct. App. 1999) ("subject to cross-examination concerning the statement" means that the opponent must have an opportunity to examine the declarant regarding the statement, not that the declarant must, in fact, have been cross-examined about the statement). Prineas' testimony regarding KAC's prior inconsistent statements was admissible.

¶ 19.  Morever, the statements· would also have been properly admitted as a hearsay exception under WIS. STAT. § 908.03. The "state of mind" exception to the hearsay rule provides:

> **(3)** THEN EXISTING MENTAL, EMOTIONAL, OR PHYSICAL CONDITION. A statement of the declarant's then existing state of mind, emotion, sensation, or physical condition, such as intent, plan, motive, design, mental feeling, pain, and bodily health, but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the execution, revocation, identification, or terms of declarant's will.

Sec. 908.03(3). As the State points out, the 1974 Judicial Council Committee's Note to this provision indicates that when a cause of action or a defense depends upon a person's state of mind, "the declarations of the

person whose state of mind is at issue are often a primary source of evidence on this matter." *Wisconsin Rules of Evidence,* 59 Wis. 2d R261 (1974). Thus, because KAC's lack of consent was an element of the sexual assault charges, her alleged remarks would be a primary source of evidence.[7] As the State correctly observes, whether KAC actually made the alleged remarks and, if so, whether they indicated consent to sexual activity with Prineas or rather reflected acquiescence to force by Prineas would be jury questions. *See id.* at R260 (trustworthiness concerns are "directed to the weight and sufficiency of the evidence and the credibility of the declarant, not to the admissibility of the statement").

¶ 20.   We conclude that KAC's alleged remarks to Prineas made during the sexual contact were admissible as prior inconsistent statements and under the "state of mind" exception to the hearsay rule, WIS. STAT. § 908.03(3). As such, the exclusion of the evidence was error.[8] We therefore turn to whether Prineas is entitled to a new trial.

---

[7] Indeed, the trial court instructed the jury:   "In deciding whether [KAC] did not consent, you should consider what [KAC] said and did, along with all the other facts and circumstances."

[8] Because we conclude that KAC's statements, as related by Prineas, would have been nonhearsay under WIS. STAT. § 908.01(4), we need not address Prineas' contention that the statements are nonhearsay because they were questions, verbal acts or admissible to show their effect on the listener under *State v. Wilson,* 160 Wis. 2d 774, 779, 467 N.W.2d 130 (Ct. App. 1991) ("Where a declarant's statement is offered for the fact that it was said, rather than for the truth of its content, it is not hearsay."); *see also* 7 DANIEL D. BLINKA, *Wisconsin Practice Series:   Wisconsin Evidence* § 801.3 (3d ed. 2008). We also need not address the parties' analysis of the applicability of WIS. STAT. § 906.13(2)(a) to the defendant's testimony.

¶ 21.   Both Prineas and the State discuss whether Prineas' defense counsel sufficiently preserved his objection for appeal by failing to offer these statutory bases for admission of the statements and failing to make sufficient offers of proof. However, both parties analyze the effect of the evidentiary error in the context of both ineffective assistance of counsel and harmless error. As to ineffective assistance of counsel, the State concedes that there was evidentiary error and that defense counsel's performance was deficient in failing to preserve a claim on that ground. However, the State contends Prineas failed to prove prejudice, or that in the absence of his attorney's errors, there is a reasonable probability—one sufficient to undermine confidence in the outcome—that the result of the proceeding would have been different. *See Strickland,* 466 U.S. at 694. "The focus of this inquiry is not on the outcome of the trial, but on 'the reliability of the proceedings.'" *State v. Thiel,* 2003 WI 111, ¶ 20, 264 Wis. 2d 571, 665 N.W.2d 305 (citation omitted).

¶ 22.   The State also contends that, even if Prineas' attorney was not deficient in his performance and adequately preserved his claim, the error is harmless because it is clear beyond a reasonable doubt that a rational jury would have reached the same guilty verdict absent the error. *See State v. Harvey,* 2002 WI 93, ¶ 49, 254 Wis. 2d 442, 647 N.W.2d 189; *Chapman v. California,* 386 U.S. 18, 24 (1967). While the defendant bears the burden of proof to establish prejudice under the ineffective assistance of counsel analysis, the State bears the burden of proof in the harmless error analy-

sis. *See Strickland,* 466 U.S. at 687; *State v. Jensen,* 2011 WI App 3, ¶ 32, 331 Wis. 2d 440, 794 N.W.2d 482 (Ct. App. 2010).

¶ 23. We acknowledge the parties' arguments; however, we need not resolve whether the errors were preserved. Our analysis as to the effect of the evidentiary error, regardless of the framework applied, is the same—the error was not harmless and it undermines our confidence in the outcome. With this in mind, we turn to the parties' arguments as to the effect of the evidentiary error.

¶ 24. The State contends that it is clear beyond a reasonable doubt that a rational jury would have reached the same guilty verdicts on Counts 5 and 6 absent the evidentiary error resulting in the exclusion of Prineas' testimony as to KAC's specific alleged remarks. Specifically, the State argues that the alleged remarks would have been superfluous and cumulative to Prineas' own descriptive testimony and "would have added little toward juror resolution of whether KAC consented to the sexual activity—particularly, with respect to Count 5 and 6," which involved the last instance of penis to vagina intercourse and the ejaculation on KAC's chest. Before addressing the State's argument, we set forth Prineas' excluded or limited testimony as to alleged statements made by KAC. Prineas would have testified that (1) KAC said, "Why wait" in response to his suggestion that they get to know each other better and "Yeah" when he asked if she would like to go with him to the basement; (2) KAC "[a]sked him to make sure [the chapter room door] was locked" upon moving in there from the game room; (3) KAC "asked me if I had protection" after they had moved to the chapter room and before they began

undressing; (4) after having trouble while standing, KAC "said it couldn't work and she asked if I wanted to do it on the floor"; (5) while KAC was straddling him, he asked "if she wanted to switch [positions], she said yes, [and] went to missionary position"; (6) KAC asked Prineas "not to say anything when he went back upstairs"; and (7) KAC asked, "Do you have anything to clean me off with," and Prineas responded that he did not and went upstairs.

¶ 25. As to statements (1) through (5), the State's primary argument is that evidence of KAC's alleged remarks to Prineas is superfluous and cumulative because Prineas was nevertheless able to characterize KAC's participation as voluntary. For example, the State argues that, while not permitted to testify that KAC asked "if [he] wanted to do it on the floor," Prineas was nevertheless able to testify that "[KAC] went down first on her hands and knees and then I came behind her . . . [and] entered her vaginally." The State contends, "Jurors did not need to hear Prineas paraphrase KAC's alleged words to know that Prineas was claiming the floor activity was consensual, while KAC was claiming it was coerced." We reject the State's characterization of the excluded evidence as cumulative.

¶ 26. The issue at trial was consent, and the question of consent under WIS. STAT. § 940.225(4) requires "an affirmative indication of willingness." *Long,* 317 Wis. 2d 92, ¶ 31. KAC's alleged requests as to locking the door, wearing protection, and changing positions during the encounter could all contribute to a finding that there was an affirmative indication of willingness. We reject the State's suggestion that Prineas' descriptions of the victim's movements and his actions are cumulative to testimony regarding KAC's alleged remarks during the assault. For example, Prineas' account that KAC asked

379

him "if [he] had protection" is not cumulative to Prineas' testimony that he put on a condom. Prineas' account that KAC asked him to make sure the chapter room door was locked is not cumulative to Prineas' testimony that they went into the chapter room. We also note one instance where the court struck the word "consensually" from Prineas' testimony that he and KAC "consensually went to the floor." The resulting testimony, "we went to the floor" does not indicate if it was voluntary on KAC's part or if she was pulled or pushed to floor. Even as to those instances when Prineas was permitted to testify that he perceived KAC's participation to be consensual, an alleged assailant's unsupported opinion or conclusion is undoubtedly less persuasive than the supporting facts. This is even more concerning when KAC was permitted to testify as to her recollection of Prineas' remarks during the encounter, such as, "No, bitch, I'm not kidding. Take your clothes off" and "shut up."

¶ 27. This brings us to credibility. "Evidence is cumulative when it 'supports a fact established by existing evidence.' " *Thiel*, 264 Wis. 2d 571, ¶ 78 (citation omitted). KAC's remarks to Prineas, if deemed credible, would bear directly on the issue of consent. Here, the issue of KAC's willingness was never "established" to such a degree that additional evidence could not have further undermined her credibility and created further reasonable doubt as to her version of events. *See id.*, ¶ 79. The jury's verdicts indicate as much. The jury's finding as to consent turned on the credibility of Prineas and KAC. Our supreme court's decision in *Thiel* provides guidance on the importance of evidence bearing on credibility in a case such as this. There, the court observed:

380

While much of the State's evidence at trial was strong, the evidence of Thiel's guilt was not beyond dispute. Moreover, additional credibility evidence might have affected the number of charges on which Thiel was convicted. We are concerned about underestimating the importance of cumulative credibility evidence in a case that depends so heavily on the credibility of the complainant. We agree with the circuit court that credibility was *the issue* upon which a reasonable doubt turned. In this case, there was no physical evidence of the alleged sexual encounters, nor did any of the supportive witnesses who testified present evidence regarding their observation, direct or indirect, of the alleged encounters. Rather, the State's witnesses all served to bolster or otherwise credit [the complainant's] version of the facts. The unreasonable errors that disabled Thiel's counsel from presenting material, discrediting facts pertinent to [the complainant's] account of the alleged encounters shakes our confidence in the result of this proceeding.

*Id.* (alteration in original; footnotes omitted). With these observations in mind, we reject the State's contention that Prineas' testimony as to KAC's actual alleged statements would have been merely superfluous or cumulative to his general characterization of their encounter.

¶ 28. The State additionally contends that because the above statements were made prior to the activity which formed the basis of Prineas' guilty verdicts, their admission would not reasonably have affected the verdicts. Prineas counters that if there was sufficient reasonable doubt as to Counts 1 through 4, the admission of KAC's alleged remarks reflecting actual consent to the sexual encounter in general "would go beyond merely raising a reason to doubt her allegations on the first four counts and instead would create

reason to doubt all of her allegations." Both arguments require this court to extrapolate from the not guilty verdicts on Counts 1 through 4 some conclusion as to whether the excluded testimony would have impacted the guilty verdicts on Counts 5 and 6. We decline to do so. The entire case was tried on the issue of consent. One can only speculate as to the impact the erroneously excluded statements would have had as to certain alleged acts as opposed to others.

¶ 29. Beyond the evidentiary error, we also have concerns regarding the associated effect of the trial court's repeated instructions to "disregard" statements made by Prineas indicating KAC's consent or to limit consideration of those statements. We assume the jury follows the trial court's admonitory instructions. *See State v. Booth*, 147 Wis. 2d 208, 216, 432 N.W.2d 681 (Ct. App. 1988). We think it likely that the jury deemed the trial court's instruction to disregard Prineas' testimony as to KAC's alleged remarks as tantamount to an instruction to disregard Prineas' recollection of the details concerning KAC's consent. This is especially so in light of the court's instruction that, in deciding the issue of consent, the jury "should consider what [KAC] said and did." Given the court's rulings and instructions, the jury was advised to consider what KAC claimed she said at the time and to disregard what Prineas claimed she said.

¶ 30. Finally, we address statements (6) and (7)— that KAC allegedly asked Prineas not to say anything about their encounter when he returned to the upstairs of the fraternity house and that she had asked him if he had anything to clean her off with. These statements, also erroneously excluded as hearsay, were made just after the alleged assaults. As to KAC allegedly asking him "not to say anything," Prineas argues that this

would demonstrate that the sexual contact was consensual because there would be no reason to make that request if the encounter had been nonconsensual. In other words, a victim would not ask her assailant not to tell anyone.

¶ 31. As to the final excluded exchange regarding whether Prineas had anything for KAC "to clean [herself] off with," Prineas acknowledges it was not directly relevant to consent. However, Prineas argues that KAC's question and his "boorish" response provides the jury with a rational explanation for KAC's "transformation from consenting partner to outraged 'victim.'" Prineas contends that the exclusion of this statement deprived Prineas' trial counsel of his chosen strategy. We agree. While the State contends that the admission of this statement may have backfired on the defense, it is not for the State or the court to second-guess defense counsel's strategy as long as it is reasonable. *See State v. Elm*, 201 Wis. 2d 452, 464–65, 549 N.W.2d 471 (Ct. App. 1996) (addressing reasonable defense strategy in the context of ineffective assistance of counsel).

¶ 32. When viewing the impact of the excluded statements as a whole, it is not clear beyond a reasonable doubt that a rational jury would have found Prineas guilty absent the evidentiary error. *See Harvey*, 254 Wis. 2d 442, ¶ 49. As to prejudice, we are satisfied that absent any error, there is a reasonable probability —one sufficient to undermine confidence in the outcome—that the result of the proceeding would have been different. *See Strickland*, 466 U.S. at 694. While our confidence in the outcome may be less easily undermined where the erroneously excluded evidence was peripheral or the outcome was strongly supported by evidence untainted by error, *Martindale v. Ripp*, 2001 WI 113, ¶¶ 30–32, 246 Wis. 2d 67, 629 N.W.2d

698, such was not the case here. In this case of he said/she said, the only issue was whether the sexual encounter was consensual. As the State acknowledges, the not guilty verdicts in Counts 1 through 4 suggest that the jury did not fully accept KAC's testimony that it was not. We conclude that the error was not harmless and it undermines our confidence in the outcome.

## CONCLUSION

¶ 33.  We conclude that the evidence of KAC's remarks made during the alleged sexual assault was admissible as prior inconsistent statements and under the "state of mind" exception to the hearsay rule. We further conclude that the erroneous exclusion of the evidence was not harmless; it undermines our confidence in the outcome of the trial. We therefore reverse the trial court's order denying Prineas' motion for postconviction relief. We remand for a new trial.

*By the Court.*—Orders reversed and cause remanded with directions.