COURT OF APPEALS
DECISION
DATED AND FILED

July 16, 2020

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing.  If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals.  *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.     **2019AP708-CR**

Cir. Ct. No.  **2017CF129**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT IV

---

STATE OF WISCONSIN,

　　PLAINTIFF-RESPONDENT,

V.

JUSTIN D. BLANCHARD,

　　DEFENDANT-APPELLANT.

---

APPEAL from a judgment of the circuit court for Columbia County: ALAN J. WHITE, Judge.  *Affirmed.*

Before Fitzpatrick, P.J., Kloppenburg, and Graham, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Justin D. Blanchard appeals the judgment of conviction entered after a jury found him guilty of battery and disorderly conduct as acts of domestic abuse perpetrated against E.U., with whom he lived and had a child. Blanchard argues that the circuit court erroneously exercised its discretion, and denied him his constitutional right to present a defense, when it excluded evidence relating to certain photographs that E.U. took of herself and sent to Blanchard days after the incident that formed the basis of the charges of which Blanchard was convicted. We affirm.

## BACKGROUND

¶2 According to the criminal complaint, E.U. told law enforcement that one day in March 2017, E.U. and Blanchard were arguing when Blanchard suddenly grabbed E.U. by her throat and squeezed very hard, causing E.U. to suffer pain and experience difficulty breathing. E.U. said that she was upset and frightened of Blanchard and that she believed that Blanchard was capable of killing her. We will generally refer to this event as "the incident" or "the March 2017 incident." The complaint charged Blanchard with one count of strangulation and suffocation, one count of battery, and one count of domestic abuse-related disorderly conduct, all as a domestic abuse repeater.

¶3 The primary defense theory was that E.U. fabricated the facts forming the basis of the charges.

¶4 Before trial, Blanchard moved the circuit court to admit, and to allow cross-examination of E.U. about, one photograph showing E.U. nude above

the waist because E.U. sent the photograph to Blanchard's cell phone three days after the incident. Blanchard submitted three photographs along with the motion.[1] At a hearing on the motion, trial counsel elaborated that the photographs, or at least E.U.'s testimony describing the photographs and admitting that she sent them to Blanchard shortly after the incident, were critical to the defense in that she "does not look terrified" in them. The circuit court denied the motion, ruling that the evidence was not critical to the defense in light of other evidence that would be admissible, including eliciting testimony from E.U. on cross-examination that she had sexual relations with Blanchard after the incident and that she had a continuing relationship with Blanchard both after the incident and after prior incidents of physical violence. At a subsequent motion hearing, the court confirmed that at trial E.U. could be asked whether her relationship and sexual relations with Blanchard continued after the incident and after prior incidents of physical violence.

¶5 Blanchard renewed his motion after E.U.'s direct testimony at trial, arguing that the photographs would impeach E.U's testimony that she did not "engage" Blanchard after the incident. The circuit court again denied the motion, ruling that E.U. could be impeached by other methods, including by eliciting testimony that she was with Blanchard the day after the incident and continued to have a relationship with him after incidents of physical violence since 2014.

---

[1] At subsequent proceedings in the circuit court, the parties referred inconsistently to one photograph and to three photographs. The circuit court in its rulings on this issue, and the parties on appeal, refer consistently to "photographs." Accordingly, from this point in this opinion we will refer to "photographs."

At a pretrial motion hearing, the State advised the circuit court that E.U. admitted to taking the photographs and to sending them to Blanchard.

¶6     After E.U. finished testifying, the State called the officer who interviewed both E.U. and Blanchard. Blanchard called his brother's girlfriend who knew E.U. Pertinent details of E.U.'s testimony, as well as additional details of Blanchard's arguments and the circuit court's rulings regarding the photographs, will be presented in the Discussion section below.

¶7     The jury found Blanchard guilty of battery and disorderly conduct, both as acts of domestic abuse, and not guilty of strangulation.

## DISCUSSION

¶8     As stated, Blanchard argues that the circuit court erroneously exercised its discretion, and denied him his constitutional right to present a defense, when it excluded "evidence that E.U. sent nude photos to [him] just days after she claimed he strangled and battered her."[2] For the following reasons, we conclude that Blanchard fails to show that the circuit court erroneously exercised its discretion in denying Blanchard's requests, and fails to show that the exclusion of the evidence denied Blanchard his right to present a defense.

¶9     We first summarize the standard of review and applicable legal principles, next present additional pertinent background, and then explain our conclusion.

_____

[2] More specifically, Blanchard argues that the circuit court erred in excluding both cropped versions of the photographs and any cross-examination about the photographs. The circuit court in effect treated both requests as one request each time it ruled on the requests. We follow the court's lead and generally refer to the subject of both requests as "evidence relating to the photographs."

## A. *Standard of Review and Pertinent Legal Principles*

¶10 Generally, we review a circuit court decision to admit or exclude evidence for an erroneous exercise of discretion, upholding such a ruling unless the court failed to apply the proper legal standard or the record lacks reasonable support for the ruling. *State v. Jackson*, 2014 WI 4, ¶43, 352 Wis. 2d 249, 841 N.W.2d 791. The circuit court has broad discretion, and our review is highly deferential; the question is not whether this court would have permitted the evidence to come in, "but whether the [circuit] court exercised its discretion in accordance with accepted legal standards and in accordance with the facts of the record." *Martindale v. Ripp*, 2001 WI 113, ¶29, 246 Wis. 2d 67, 629 N.W.2d 698 (citation omitted). We will not find an erroneous exercise of discretion if the court had a rational basis for its evidentiary decision. *Id.*

¶11 "Whether photographs are to be admitted is a matter within the [circuit] court's discretion." *State v. Linton*, 2010 WI App 129, ¶25, 329 Wis. 2d 687, 791 N.W.2d 222. "Photographs should be admitted if they help the jury gain a better understanding of material facts and should be excluded if they are not substantially necessary to show material facts and will tend to … direct the jury's attention to improper considerations." *Id.* (citation omitted); *see also State v. Pfaff*, 2004 WI App 31, ¶34, 269 Wis. 2d 786, 676 N.W.2d 562 (casting doubt on admitting photographs that have only the purpose "to inflame and prejudice the jury") (citation omitted).

¶12    Relevant evidence is generally admissible.   WIS. STAT. § 904.02 (2017-18).[3]  However, relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."  WIS. STAT. § 904.03.

¶13    "[W]hether the exclusion of evidence denies an accused the right to present a defense is a question of constitutional due process and is determined by this court."  *State v. Prineas*, 2012 WI App 2, ¶15, 338 Wis. 2d 362, 809 N.W.2d 68 (2011) (citing *State v. St. George*, 2002 WI 50, ¶¶16, 38, 52, 252 Wis. 2d 499, 643 N.W.2d 777).  "[T]he Constitution permits judges to exclude evidence that is repetitive, only marginally relevant or poses undue risk of harassment, prejudice, or confusion of the issues."  *Holmes v. South Carolina*, 547 U.S. 319, 326-27 (2006) (internal quotations, ellipses, and citation omitted).

### B.  Additional Pertinent Background

¶14    **Pretrial.**  *Blanchard's Motion and Arguments.*  As stated, Blanchard filed a pretrial motion to admit evidence of nude photographs that E.U. had taken of herself and sent to Blanchard's phone three days after the incident.  In the motion, Blanchard stated, "The significance of the photo[s] is that [they were] sent to Blanchard's phone on March 13th, 2017," just days after the date of the incident.  At the hearing on the motion, Blanchard's attorney elaborated on his reason for seeking admission of the photographs, asserting that the photographic

---

[3] All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

evidence "goes to [E.U.'s] credibility, the whole thing about did this really happen. If it did happen, if you were strangled, if this is … at least the third time you've been strangled, isn't it true you sent these photos and isn't it true that you had sexual contact with him [just days] after the incident?" Blanchard's attorney also asserted that the photographs "can be described as kind of inviting. She does not look terrified." Blanchard's attorney also clarified that if the photographs were not admitted, he sought permission to ask E.U. "to admit, in front of the jury," that the photographs exist and that she sent them.

¶15 *The State's Arguments.* The State argued against the admission of evidence relating to the photographs, asserting that there was "no legitimate purpose in the defense presenting even the existence of these photos to the jury. This is just another way for this defendant to try to humiliate this victim, as he has done."

¶16 *The Circuit Court's Ruling.* The circuit court directed that the photographs neither be mentioned nor shown to the jury. The court found that it would be "very humiliating for [E.U.] to have [the photographs] put before the jury," and that even to ask E.U. about the photographs "would be degrading to her." The court also determined that, while the photographs may be probative of the fact that E.U. and Blanchard's relationship continued after allegations of assault, "that can be shown in many [other] ways," including that through evidence related to this and prior incidents of physical violence, the jury would hear and be aware of evidence regarding whether E.U. and Blanchard still lived together, and "still had an amorous feeling toward each other or still engaged in sexual intercourse with each other" after incidents of physical violence.

¶17    At a subsequent motion hearing two days later, the circuit court reiterated: "There [are] going to be no photographs shown, and they're not going to be testified to.… No mentioning of nude photos. No mentioning of any photos." The court explained, "I don't want this alleged victim to be humiliated by continual questions about sexual relations with the defendant because it doesn't have to be put into those terms. Their relationship continued.... It's a sexual relationship." The court expressly confirmed that, at trial, defense counsel could ask E.U. whether her relationship and sexual relations with Blanchard continued after the March 2017 incident and prior incidents of physical violence.

¶18    **Trial.** *E.U.'s Testimony on Direct Examination.* E.U. testified on direct examination in pertinent part as follows.

¶19    E.U. and Blanchard began dating in 2013, after which time they lived together on and off. In April 2014, Blanchard grabbed E.U. by the throat and squeezed, after which Blanchard stood over E.U. and kicked her. When E.U. asked him what had happened, Blanchard told her that he had "choked [her] out." This incident made E.U. aware that Blanchard is "more than capable of killing me." In June 2014, Blanchard assaulted E.U., which led to her losing her top row of teeth. E.U. and Blanchard had a child together, born in 2015.

¶20    In March 2016, when their daughter was about nine months old, E.U. and Blanchard had a disagreement, during which time Blanchard became very angry and agitated. E.U. told Blanchard that she was leaving and that she did not want to have her children there with him. In response, Blanchard grabbed E.U. by the throat, pushed her down, and told her that she could not leave. Blanchard did not live with E.U. from August 2016 until January 2017, during which period E.U. sought domestic violence education online and at a domestic

violence shelter. E.U. understood that Blanchard was receiving treatment and education about domestic violence during this same period.

¶21 On Friday March 10, 2017, E.U. returned to her apartment where she and Blanchard lived. That evening, E.U. and Blanchard had an argument because E.U. had broken off their relationship a few days before. While yelling at E.U., Blanchard "flung" his arm, which scared their daughter. E.U. told Blanchard that "I know how you operate.… I read up all about your kind." Blanchard then grabbed E.U. by her throat and squeezed, telling E.U. that "I am not the typical narcissistic psychopath that you know. I am different." E.U. thought that Blanchard was going to kill her in front of their daughter. Once she broke free of his grip, E.U. grabbed her daughter and "was choking back tears because I did not want her to see me so upset and distraught. And I went into the living room and sat down and I proceeded to feed her." E.U. did not leave the apartment after the choking because she knew, based on the way Blanchard had reacted when she tried to leave in March 2016, it would put her and her daughter in harm's way. During her domestic violence training, E.U. had learned to "do what you have to do to be safe.… I knew we could not leave, so I proceeded to keep my distance from him. I proceeded to not engage him in any way or make him agitated or upset. So I just—I took a step back and I just kept my distance from him." On March 22, 2017, a domestic violence shelter encouraged her to contact the police about the March 10 incident.

¶22 *Blanchard's Renewed Request to Admit the Photographs.* After E.U.'s direct examination, out of the presence of the jury, Blanchard renewed his request that the circuit court allow the photographs' admission, because E.U. had "testified, when she was talking about [domestic violence] counseling, she had gotten advice … to stay calm and not engage the person in any way. It appears

9

[that] when the [nude photographs] were sent, that she was engaging him.… [G]iven that she said she did not engage him in any way, that seems contrary and she could be impeached on that." The court rejected Blanchard's request either to present the photographs or to question E.U. about them, reiterating its prior reasoning that E.U. could be impeached without showing any photographs, with questions going to E.U.'s pattern of continued sexual relations with Blanchard after each of Blanchard's assaults. The court also noted that the gist of E.U.'s testimony was that she had learned to do whatever she needed to do to keep things calm and keep herself safe and that her testimony about her sexual relations with Blanchard could be viewed either as contrary to what she testified she learned, or "might fit right in with the profile."

¶23 *E.U.'s Testimony on Cross-Examination.* On cross-examination, E.U. testified as follows. She continued to live and have a relationship and sexual relations with Blanchard after the 2014 incidents. The day after the March 10, 2017 incident, she and Blanchard went to Walmart to get ingredients for a shared dinner and later that day they had sexual relations. E.U. stayed with Blanchard that weekend "because I had nowhere to go. And I was just keeping the peace between me and him…. I was doing nice stuff. I wasn't doing anything to make him angry or upset, to do what I've got to do to keep me and my daughter safe. And if he wasn't upset and angry, we were safe."

¶24 E.U. believed that if she went to the police about Blanchard, he would kill her, and that there had been several instances in which the police were called before, but Blanchard would "take off" and "wait for the police to leave. Then he would turn around and come back to the home. Then he would threaten me." When E.U. contacted the police about the March 2017 incident, she told an

10

officer that she had no injuries from the incident and had not sought out medical attention after it.

## C. Analysis

¶25   As we explain, we conclude that Blanchard fails to show that the circuit court erroneously exercised its discretion or denied Blanchard his constitutional right to present a defense.

¶26   As summarized above, both before and during trial, the basis of Blanchard's relevancy argument in favor of admitting evidence relating to the photographs was that, to the extent the evidence showed E.U.'s continued relationship with Blanchard so soon after the incident, that evidence went to E.U.'s credibility about whether the incident really happened.[4]   As summarized above, when the circuit court rejected Blanchard's argument, it repeatedly referenced other admissible evidence, namely E.U.'s own testimony about her continuing relationship including sexual relations with Blanchard both after the

---

[4] On appeal Blanchard argues additional, alternative theories of relevance supporting the admission of this evidence, including that the photographs would have impeached E.U.'s stated timeline of her presence in her apartment; that the photographs would have impeached E.U.'s account of strangulation because, according to Blanchard, the photographs "show no signs of bruising, abrasion, swelling, or puffiness, or any other indication of trauma"; and that no other "temporally close corroborative physical evidence" was presented.  Blanchard failed to give the circuit court an opportunity to consider these alternative theories of relevance and we reject them on that basis. *See* **State v. Rogers**, 196 Wis. 2d 817, 827, 539 N.W.2d 897 (Ct. App. 1995) (the forfeiture rule requires that a party must "make all of [its] arguments to the [circuit] court" to preserve them on appeal); **State Farm Mut. Auto. Ins. Co. v. Hunt**, 2014 WI App 115, ¶32, 358 Wis. 2d 379, 856 N.W.2d 633 ("Arguments raised for the first time on appeal are generally deemed forfeited.").  Moreover, Blanchard's assertion that that the photographs are relevant to show lack of physical markings on E.U. is made for the first time in his reply brief.  "It is a well-established rule that we do not consider arguments raised for the first time in a reply brief." **Bilda v. County of Milwaukee**, 2006 WI App 57, ¶20 n.7, 292 Wis. 2d 212, 713 N.W.2d 661.

March 2017 incident as well as after prior incidents of domestic violence, and the degrading nature of the photographic evidence. From these comments, it can be reasonably inferred that the circuit court determined that whatever probative value the evidence had was substantially outweighed by its needless cumulative nature. "When the probative value of evidence … is needlessly duplicative and cumulative in character, the circuit court need not admit it." *State v. Speese*, 199 Wis. 2d 597, 605, 545 N.W.2d 510 (1996); *see also* WIS. STAT. § 904.03 (relevant evidence "may be excluded if its probative value is substantially outweighed by … considerations of … needless presentation of cumulative evidence"). The record shows that the circuit court made a reasonable decision consistent with the law and the facts when it excluded the evidence relating to the photographs.

¶27 We now explain why we reject Blanchard's arguments to the contrary.

¶28 Blanchard appears to concede that the circuit court properly determined that the fact that Blanchard and E.U. "had an ongoing relationship … could be shown in other ways," but argues that the photographs would in addition have "called into question whether E.U. was actually scared of [him], thus providing the jury more reason to doubt her account of the [incident]." Blanchard does not persuade us that showing E.U. was not scared of Blanchard is meaningfully different from showing that E.U. continued her relationship with him. Moreover, the circuit court acknowledged the absence of any such difference when it noted that E.U.'s testimony of her pattern of a continued relationship with Blanchard after the March 2017 and prior incidents of domestic violence could be viewed either as contrary to what she testified she learned about not provoking Blanchard, or "might fit right in with the profile" of a victim of domestic abuse. Thus, the court did not disregard this aspect of the photographs.

¶29    Blanchard argues that any humiliation to E.U. could be ameliorated by cropping the photographs or only allowing cross-examination of E.U. about the photographs. However, the record supports the inference that the circuit court determined that any reference to the photographs would be humiliating to E.U. Moreover, this argument disregards the primary basis for the court's rulings, which was that the probative value of any evidence relating to the photographs was substantially outweighed by the evidence being needlessly cumulative.

¶30    Blanchard argues that the evidence relating to the photographs shows that E.U. "engaged" Blanchard shortly after the March 2017 incident and, thus, "directly impeached E.U.'s testimony that she had learned from her domestic violence training to stay away from Mr. Blanchard following these sorts of outbursts" and impeached E.U.'s testimony that she did "not engage him" after the March 2017 incident. However, the record establishes, and the circuit court determined, that by "not engage" E.U. meant "not [to] make [Blanchard] agitated or upset" in order to keep herself and her daughter safe. The court reasonably rejected the argument that the evidence relating to the photographs contradicted E.U.'s testimony that she learned not to provoke Blanchard after a violent incident, and endeavored not to provoke him after the March 2017 incident.

¶31    In sum, we conclude that Blanchard fails to show that the circuit court erroneously exercised its discretion when it rejected Blanchard's requests to admit evidence relating to the photographs.

¶32    Our conclusion defeats Blanchard's argument that the circuit court's exclusion of the evidence relating to the photographs denied him his constitutional right to present a defense. We have explained that the circuit court had a valid basis to exclude the evidence based on its cumulative nature, and there could be no

constitutional dimension to an evidentiary argument that we reject on that ground. Blanchard develops no argument supported by pertinent legal authority to the contrary.

## CONCLUSION

¶33     For the reasons stated, we affirm.

*By the Court.*—Judgment affirmed.

This opinion will not be published.  *See* WIS. STAT. RULE 809.23(1)(b)5.