COURT OF APPEALS
DECISION
DATED AND FILED

September 22, 2020

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2020AP793**

Cir. Ct. No. **2017TP38**

**STATE OF WISCONSIN**

**IN COURT OF APPEALS
DISTRICT III**

IN RE THE TERMINATION OF PARENTAL RIGHTS TO A. P.,
A PERSON UNDER THE AGE OF 18:

BROWN COUNTY HUMAN SERVICES,

PETITIONER-RESPONDENT,

V.

T. F.,

RESPONDENT-APPELLANT.

APPEAL from an order of the circuit court for Brown County: THOMAS J. WALSH, Judge. *Reversed and cause remanded with directions.*

¶1 SEIDL, J.[1] T.F. appeals an order involuntarily terminating her parental rights to her daughter, Allie.[2] At a hearing prior to the jury trial at the grounds phase, the circuit court granted the Brown County Human Services Department's (the Department) motion in limine prohibiting T.F. from presenting evidence to the jury that she visited or communicated with Allie after the date the Department filed the termination of parental rights (TPR) petition. T.F. argues the court erroneously exercised its discretion by granting the Department's motion and that the court's error was not harmless. We agree. Therefore, we reverse the order terminating T.F.'s parental rights to Allie and remand for a new jury trial at the grounds phase of these proceedings consistent with this opinion.[3]

## BACKGROUND

¶2 T.F. gave birth to her daughter, Allie, on June 2, 2014. In July 2014, Marinette County initiated Child in Need of Protection or Services (CHIPS) proceedings and was granted temporary custody of Allie. In October 2014, the Marinette County circuit court found Allie was in need of protection or services, and it entered a CHIPS dispositional order that placed her in a foster home in

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2) (2017-18). All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

[2] For ease of reading and consistency with our prior decision in this case, we use a pseudonym when referring to T.F.'s daughter. *See Brown Cty. Human Servs. v. B.P.*, 2019 WI App 18, ¶1 n.2, 386 Wis. 2d 557, 927 N.W.2d 560. We rely upon the facts in *B.P.* for the background here.

[3] Cases appealed under WIS. STAT. RULE 809.107 "shall be given preference and shall be taken in an order that ensures that a decision is issued within 30 days after the filing of the appellant's reply …." *See* RULE 809.107(6)(e). Conflicts in this court's calendar have resulted in a delay. It is therefore necessary for this court to sua sponte extend the deadline for a decision in this case. *See* WIS. STAT. RULE 809.82(2)(a); *Rhonda R.D. v. Franklin R.D.*, 191 Wis. 2d 680, 694, 530 N.W.2d 34 (Ct. App. 1995). Accordingly, we extend our deadline to the date this decision is issued.

Marinette. In March 2015, court orders were entered changing venue of this action to Brown County and Allie's physical placement to a different foster home in Brown County. A subsequent court order in June 2016 returned Allie's placement to her original foster parent, who had moved to Madison. Since Allie's original removal in July 2014, she has never returned to T.F.'s care.

¶3 On October 30, 2017, the Department filed a petition to permanently and involuntarily terminate T.F.'s parental rights. The petition alleged that T.F. had abandoned Allie for a period of six months or longer. *See* WIS. STAT. § 48.415(1)(a)3. T.F. contested the petition. In May 2018, the Department moved for partial summary judgment, contending that grounds existed to terminate T.F.'s parental rights. The circuit court held a hearing on the motion, and the court granted the Department partial summary judgment on the issue of T.F.'s parental unfitness. T.F. petitioned for leave to appeal from a nonfinal order pursuant to WIS. STAT. RULE 809.50, and we granted her petition.

¶4 On March 1, 2019, we reversed the circuit court's grant of partial summary judgment in favor of the Department. On remand, the court scheduled the matter for a grounds phase jury trial.

¶5 The parties filed motions in limine prior to trial, and the circuit court addressed their motions at a final pretrial conference on August 8, 2019. As relevant to T.F.'s appeal, the Department sought:

> To prohibit [T.F.] from eliciting any testimony or submitting any evidence that she has visited or communicated with [Allie] after October 30, 2017, the date that this Petition was filed. This testimony is not relevant to the periods of abandonment alleged in the [P]etition and will only confuse the jury as to the periods of time they are to consider in determining whether [T.F.] has abandoned this child.

3

¶6      T.F. opposed the Department's motion, arguing that motion would violate her due process rights.  Specifically, T.F.'s counsel contended:

> This is going to go directly towards a good cause defense in that it was the failure of the [D]epartment to do their job while my client was incarcerated and during the period of abandonment.
>
> So what I would like to show is that once the [D]epartment did follow through with their end of the bargain here in doing their job, they were able to do visits between my client and her child, and basically it's part of our defense.
>
> So without being able to provide evidence that the [D]epartment started to provide transportation to my client to Madison and those visits happened are a good cause defense of the [D]epartment not doing their job is basically being cut off by not being able to present this evidence.

¶7      The Department responded that it thought the evidence was "going to be prejudicial to the [D]epartment's case, because the argument is going to be, well, she's having visits now.  I don't want to see an argument where she's having visits now, … she didn't have it back then, but she's doing it now so everything should be okay."  The Department further argued: "Visitation that began after we filed for the period of abandonment, which is not part of the alleged time frame, I don't think is even relevant to this case.  The actions that were taken by any of the parties for that matter isn't even relevant to this case."  The Department then requested that if the circuit court was going to deny its motion, it would then "ask the Court for the ability to get into any information regarding those visits, [T.F.]'s failure to appear at those visits and what efforts the [D]epartment made to try to accommodate her schedule as well," which T.F.'s counsel agreed to as "a little bit of a tit for tat, I guess."

¶8      The circuit court provisionally granted the Department's motion. The court explained:

> I'm on the juvenile jury instruction committee, and I know there's been some case law that some of this—the date of events post-filing, so what I'm going to do is, I'm going to provisionally grant this motion, because I think it's the right decision, and you have to focus on the time of abandonment and provide a defense for that period. But I'm going to do a little more research on it, and I will certainly notify you as soon as tomorrow if I find anything else. But that is my inclination, that we're going to confine it to that.
>
>   ….
>
> I do know it is different, however, for the different types of filings. If you have [a continuing CHIPS] case, post-filing actions are very relevant. So I am not, by any stretch, suggesting that post-filing actions are never relevant. I'm just not convinced that it is in an abandonment case.

Allie's guardian ad litem "agreed with the Court's analysis" because it was his "understanding … that this is limited to what was happening at the time of the petition." Additionally, he was "concerned about jury confusion if we go into post-petition facts. That seems to be most relevant to me as we start to get into the best interest of the child factors." The next day, the court sent a letter to the parties stating that it was "not going to change any of the rulings" it made at the pretrial hearing.

¶9      Following a two-day trial, the jury found that the Department had proven T.F. abandoned Allie pursuant to WIS. STAT. § 48.415(1)(a)3. In doing so, the jury found T.F. did not have good cause for having failed to visit Allie during

the abandonment period.[4] The circuit court held a dispositional hearing on November 21, 2019, at which the court entered an order involuntarily terminating T.F.'s parental rights to Allie. T.F. now appeals, and additional facts are provided below.

## DISCUSSION

¶10 The Department alleged T.F. abandoned Allie under WIS. STAT. § 48.415(1)(a)3. In relevant part, that statute required the Department to prove: "The child has been left by the parent with any person, the parent knows or could discover the whereabouts of the child and the parent has failed to visit or communicate with the child for a period of 6 months or longer." However, § 48.415(1)(c) provides a parent with a good cause defense to the abandonment ground as follows:

> Abandonment is not established … if the parent proves all of the following by a preponderance of the evidence:
>
> 1. That the parent had good cause for having failed to visit with the child throughout the time period specified in par. (a)2. or 3., whichever is applicable.
>
> 2. That the parent had good cause for having failed to communicate with the child throughout the time period specified in par. (a)2. or 3., whichever is applicable.
>
> 3. If the parent proves good cause under [§ 48.415(1)(c)2.], including good cause based on evidence that the child's age or condition would have rendered any communication with the child meaningless, that one of the following occurred:

---

[4] Because the jury found T.F. did not have good cause for having failed to visit Allie, it did not—and need not—answer the next question on the special verdict form regarding whether T.F. had good cause for having failed to communicate with Allie during the abandonment period. A good cause defense to abandonment requires a showing of good cause with respect to both visitation and communication. *See* WIS. STAT. § 48.415(1)(c).

a. The parent communicated about the child with the person or persons who had physical custody of the child during the time period specified in par. (a)2. or 3., whichever is applicable ….

b. The parent had good cause for having failed to communicate about the child with the person or persons who had physical custody of the child or the agency responsible for the care of the child throughout the time period specified in par. (a)2. or 3., whichever is applicable.

¶11 T.F. argues the circuit court erred by granting the Department's motion in limine prohibiting her from eliciting any testimony or submitting any evidence that she visited or communicated with Allie after October 30, 2017. She contends that because of that error, she was denied her constitutional due process right to present evidence at the jury trial central to her good cause defense against a TPR. *See* ***Brown Cty. v. Shannon R.***, 2005 WI 160, ¶53, 286 Wis. 2d 278, 706 N.W.2d 269. We review a circuit court's decision to admit or exclude evidence for an erroneous exercise of discretion.[5] ***La Crosse Cty. DHS v. Tara P.***, 2002 WI App 84, ¶6, 252 Wis. 2d 179, 643 N.W.2d 194. A court properly exercises its discretion when it examines the relevant facts, applies a proper standard of law, and, using a demonstrated rational process, reaches a conclusion that a reasonable judge could reach. ***Dane Cty. DHS v. Mable K.***, 2013 WI 28, ¶39, 346 Wis. 2d 396, 828 N.W.2d 198.

---

[5] Whether the exclusion of evidence denies a parent the right to present a defense is a question of constitutional due process subject to de novo review. *See* ***State v. Prineas***, 2012 WI App 2, ¶15, 338 Wis. 2d 362, 809 N.W.2d 68; *see also* ***Brown Cty. v. Shannon R.***, 2005 WI 160, ¶¶53-56, 286 Wis. 2d 278, 706 N.W.2d 269 (recognizing a parent in TPR proceedings has a due process right to present admissible evidence central to his or her defense). Because we decide this case on different grounds, we need not, and do not, address this issue. *See* ***Patrick Fur Farm, Inc. v. United Vaccines, Inc.***, 2005 WI App 190, ¶8 n.1, 286 Wis. 2d 774, 703 N.W.2d 707 (court of appeals decides cases on the narrowest possible grounds).

¶12    Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  WIS. STAT. § 904.01.  "A witness's credibility is always 'consequential' within the meaning of … § 904.01." *State v. Marinez*, 2011 WI 12, ¶34, 331 Wis. 2d 568, 797 N.W.2d 399 (quoting Daniel D. Blinka, *Wisconsin Practice Series: Wisconsin Evidence* § 401.101, at 98 (3d ed. 2008)).  "All relevant evidence is admissible, except as otherwise provided by the constitutions of the United States and the state of Wisconsin, by statute, by these rules, or by other rules adopted by the supreme court.  Evidence which is not relevant is not admissible."  WIS. STAT. § 904.02.

¶13    At trial, the Department sought to prove that T.F. abandoned Allie for a period of at least six months between September 1, 2016 and October 30, 2017—the date the Department petitioned for TPR.  One of T.F.'s primary defenses was that if the jury believed the Department proved abandonment, she had good cause for not communicating with and visiting Allie.  In particular, T.F. contended that it was *the Department* that had "abandoned T.F. by failing to reasonably facilitate visits and communication between T.F. and [Allie] until after the [D]epartment moved to terminate T.F.'s parental rights."

¶14    On appeal, T.F. argues that the evidence she was prohibited from providing to the jury at trial was relevant under WIS. STAT. § 904.01.  In T.F.'s view, "evidence of post-filing contact between T.F. and [Allie], and the circumstances and details concerning that contact would have explained and demonstrated why T.F. had good cause for failing to have contact prior to the [D]epartment's filing."

¶15 Specifically, T.F. contends that the Department imposed unreasonable conditions upon her prepetition contact and failed to facilitate her visits with Allie prepetition. In T.F.'s view, the fact that she was able to have contact with Allie after the petition was filed when the Department lifted the unreasonable restrictions and facilitated that contact could have demonstrated that she had good cause for failing to visit Allie prepetition due to the Department imposing unreasonable barriers that prevented her from doing so. T.F. had visits with Allie after October 30, 2017. She asserts that these postfiling visits, "after the [D]epartment provided transportation for [her] to Madison and after the [D]epartment lifted the unreasonable conditions placed upon these visits, would have had the tendency to make [her] good cause defense under WIS. STAT. § 48.415(1)(c)1. much more probable than without this evidence."

¶16 T.F. argues the evidence she provided to the jury regarding why she did not have visits with Allie before October 30, 2017, "would have been placed in proper context to what happened when the [D]epartment did its job rather than stood in the way of visits between T.F. and [Allie]." In other words, T.F. contends that the postfiling evidence would have bolstered her credibility in arguing that it was the Department that obstructed her ability to visit and communicate with Allie during the abandonment period, and that without such obstruction, she would have been visiting and communicating with Allie.

¶17 T.F. reasons the circuit court erroneously exercised its discretion because it neither considered the relevant facts nor applied the correct legal standard. She argues the court did not apply WIS. STAT. § 904.01 to determine whether the postfiling evidence was relevant, but, rather, the court "focused entirely on a purely legal conclusion that post-filing events or facts are never relevant to a good cause defense to abandonment." We agree with T.F. that the

9

court erroneously exercised its discretion by failing to properly assess the postfiling evidence's relevancy under § 904.01.

¶18 We first determine that the circuit court erred by concluding, as a matter of law, that a parent is always prohibited from introducing facts regarding events occurring after the petition's filing date in all abandonment TPR cases. The plain language of WIS. STAT. § 48.415(1) does not limit the evidence that a parent may submit to that which existed prior to the filing of the TPR petition. There is no statutory support for the proposition that evidence of activities occurring outside of the alleged abandonment period is irrelevant.

¶19 Second, the circuit court erroneously exercised its discretion in finding that T.F.'s postpetition visits were not relevant to the issues to be decided by the jury. For the Department to prove abandonment, it was required to show, by clear and convincing evidence, *see* WIS. STAT. § 48.31(1), that Allie was left by T.F. with any person, that T.F. knew or could have discovered Allie's whereabouts, and that T.F. failed to visit or communicate with Allie for a period of six months or longer. *See* WIS. STAT. § 48.415(1)(a)3. For T.F. to convince the jury that she had good cause for "abandoning" Allie, she was required to prove, by only a preponderance of the evidence, that she had good cause for having failed to visit and communicate with Allie "throughout the time period specified in [§ 48.415(1)(a)3.]"—i.e., the abandonment period. *See* § 48.415(1)(c)1., 2.

¶20 As part of her good cause defense to abandonment at trial, T.F. argued that the Department "stood in the way of" her visiting Allie by placing, in her view, unreasonable conditions for her to visit Allie during the abandonment period. For example, the Department in October 2016 conditioned T.F.'s visits with Allie on T.F. obtaining an individual counselor, and scheduling and attending

10

an alcohol or other drug abuse (AODA) assessment. T.F., however, introduced evidence that she had recently completed AODA programming as well as a parenting class. She also introduced evidence that although this programming did not satisfy the Department's AODA condition because the counselor was not AODA certified, T.F. could not participate in a different AODA assessment because, in part, there were no AODA services located in the area in which she resided. T.F. further alleged the Department acted as a barrier by failing to help her arrange transportation to Allie's foster home—which was over 100 miles away—when it knew T.F. had no driver's license.[6]

¶21    In addition, T.F. maintained that her assigned social worker was derelict in her duties to provide assistance to T.F. during the abandonment period. Specifically, T.F. faulted her social worker for failing to reasonably facilitate visits and communication with Allie. T.F. introduced evidence at trial that her social worker failed to comply with Wisconsin's "standards of practice for both ongoing child protection workers and intake child protection workers." For example, T.F.'s social worker was required to have, at a minimum, monthly face-to-face contact with T.F. beginning in March 2015 when the social worker was assigned to T.F. after the venue of this matter changed to Brown County. The social worker testified, however, to having contact with T.F. during only seven months between March 2015 and October 2017. In all, T.F. asserts that her good cause defense would have been more credible had she been able to provide evidence that, although occurring after the abandonment period, she did have face-to-face visits

---

[6] The Department does not appear to dispute that there were no AODA services located in the area in which T.F. resided and that it shouldered some responsibility to help her facilitate travel to Allie's foster home.

with Allie once the alleged unreasonable conditions were lifted and the Department provided the type of assistance that she was supposed to receive during the abandonment period.

¶22 We agree with T.F. that her good cause defense would have been more credible had she been able to present the postfiling evidence. Generally, a person's credibility is always relevant under WIS. STAT. § 904.01. *See Marinez*, 331 Wis. 2d 568, ¶34. Although the postfiling evidence occurred after the abandonment period, it plainly relates to the Department's alleged conduct during the abandonment period and its impact on T.F.'s failure to visit or communicate with Allie during that period. Thus, the postfiling evidence here has a tendency to make a consequential fact during the abandonment period—e.g., whether T.F. had good cause for failing to communicate with or visit Allie—more likely to have occurred. *See* § 904.01.

¶23 The Department contends that the circuit court considered the postfiling evidence and determined it was irrelevant when considering the standard for relevancy under WIS. STAT. § 904.01 and what elements of proof were at issue in this case. The Department argues that the abandonment ground's plain language referring to the "time period specified under par. (a)2. or 3." makes it clear that only evidence relevant to the proof needed to establish abandonment, and the proof needed to support a good cause defense, are the facts and circumstances specifically related to the events that took place during the period of alleged abandonment. In other words, the Department contends that final element under the abandonment statute required the Department to prove that T.F. had no contact with Allie during the abandonment period, and T.F.'s good cause defense that she had contact with Allie after that period does not address whether the Department met its burden of proof on that element.

¶24     The problem with the Department's argument is that the postfiling evidence does, in fact, relate to T.F.'s and the Department's conduct during the abandonment period. As part of her good cause defense, T.F. alleged that the Department was derelict in its duties to her during the abandonment period. Although the postfiling evidence of the Department's conduct in arranging for visitation and communication between T.F. and Allie occurred after the abandonment period, that evidence supports T.F.'s contention that the Department "stood in the way" of her communicating with or visiting Allie during the abandonment period because the Department failed to engage in that helpful conduct prior to filing the petition. Put another way, the fact that the Department helped T.F. after the abandonment period by removing alleged impediments to her communication and visitation is relevant to an element of proof—her good cause defense to abandonment—because it has a tendency to make more probable T.F.'s claim that the Department hindered her ability to communicate with and visit Allie during the abandonment period, and that without such hindrance, she would have been visiting and communicating with Allie during that time. *See* WIS. STAT. § 904.01.

¶25     The Department also argues that the circuit court's decision to exclude the postfiling evidence "is consistent with case law relevant to this issue." It asserts that two cases, *State v. Gregory L.S.*, 2002 WI App 101, 253 Wis. 2d 563, 643 N.W.2d 890, and *S.D.S. v. Rock County Department of Social Services*, 152 Wis. 2d 345, 448 N.W.2d 282 (Ct. App. 1989), provide authority that postfiling evidence in abandonment cases is *always* irrelevant because the abandonment ground is not predictive in nature and because its elements focus on events occurring in the past. We disagree.

¶26   To begin, neither case the Department relies upon creates such bright-line rules.   Additionally, the cases the Department cites are materially distinguishable.   As even the Department concedes, *Gregory L.S.* is factually distinguishable because it involves CHIPS proceedings, not TPR proceedings.  *See Gregory L.S.*, 253 Wis. 2d 563, ¶¶1-3.   We fail to see how *Gregory L.S.*'s holdings inform our analysis of this TPR case because a child's need for protection or services guides determinations in CHIPS proceedings, *see id.*, ¶¶38-40, whereas the parents' rights are paramount at the grounds phase of TPR proceedings, *see Sheboygan Cty. DHHS v. Julie A.B.*, 2002 WI 95, ¶24, 255 Wis. 2d 170, 648 N.W.2d 402.

¶27   In *S.D.S.*, the other case the Department relies upon, Rock County sought to terminate the parents' rights using the continuing CHIPS ground set forth in WIS. STAT. § 48.415(2).  *See S.D.S.*, 152 Wis. 2d at 348.  The court held that in continuing CHIPS cases, where the petitioner must prove that there is a substantial likelihood that the parent will not meet the future conditions established for the child's return, evidence of postfiling events can be relevant to that substantial likelihood element.  *Id.* at 359.  This court reached that conclusion because "[t]o assess the likelihood that a parent will not meet certain conditions in the future may necessarily involve consideration of fresh facts occurring between the date the petition was filed and the hearing."  *Id.*  We agree with T.F., however, that *S.D.S.*'s holding does not inform the issues presented here because "[t]he fact that such evidence might be *required* in one type of TPR case provides no support for the position that the post-filing evidence is *never* relevant in a different type of TPR case."

¶28   Moreover, a more recent case from our supreme court, *State v. Bobby G.*, 2007 WI 77, 301 Wis. 2d 531, 734 N.W.2d 81, casts doubt on the

Department's assertions that the presence of a predictive element in a TPR ground and the ground's language determines the relevancy of evidence in a TPR case. In *Bobby G.*, our supreme court found unpersuasive the State's argument that Bobby G.'s postfiling efforts to assume parental responsibility were irrelevant to that TPR ground. *Id.*, ¶48. Pertinent to the Department's arguments here, the *Bobby G.* court observed that the introductory language in the TPR statute, WIS. STAT. § 48.415, "does not require that the evidence regarding the grounds be limited to what has transpired as of the date of filing of the petition. All the statute requires is that at the time of the fact-finding hearing the State prove the statutory grounds for termination by clear and convincing evidence." *Bobby G.*, 301 Wis. 2d 531, ¶53.

¶29     Further, the *Bobby G.* court expressly questioned the validity of the "predictive element" argument the Department urges us to adopt here. *See id.*, ¶54. In *Bobby G.*, the State relied on a comment in WIS JI—CHILDREN 180 to argue that Bobby G.'s postfiling conduct "is admissible only for [TPR grounds] that contain a predictive element." *Id.* In this case, the Department cites the same jury instruction comment[7] in making the same argument as to the abandonment ground.

---

[7] The pertinent parts of the comment in WIS JI—CHILDREN 180 to which the Department cites are as follows:

> **Issue of Date or Time Period for Jury Verdict.** The issue of the date or time period upon which the jury must focus is most likely to arise with respect to the many jurisdictional grounds which are worded in the present tense.
>
> ….
>
> **Admissibility of Evidence of Post-Petition Conduct.** Since this instruction was first approved in 1996, the legislature has

(continued)

¶30     Like our supreme court in **Bobby G.**, however, we remain unconvinced that WIS JI—CHILDREN 180 provides for the bright-line rule that the Department seeks.  The comment to that jury instruction "acknowledges that the issue of the relevant time period arises in several grounds and concludes that 'the question of timing the jury's consideration of prepetition and postpetition evidence must be resolved by the trial judge in the context of the jurisdictional ground at issue.'"  **Id.** (quoting WIS JI—CHILDREN 180 comment).  **Bobby G.**, and WIS JI—CHILDREN 180 for that matter, thus support our conclusion that the relevancy and admissibility of postfiling evidence in abandonment TPR cases are determined on a case-by-case basis by analyzing the evidence under the rules set forth in WIS. STAT. ch. 904, as nothing in WIS. STAT. § 48.415(1) provides that postfiling evidence is always irrelevant and inadmissible in abandonment cases.

¶31     For the foregoing reasons, we reject the Department's argument that the postfiling evidence here is irrelevant simply because the abandonment ground is not predictive in nature and because its elements focus on events occurring in the past.  We therefore conclude the circuit court erroneously exercised its discretion by prohibiting T.F. from presenting relevant postfiling evidence at the

---

added a number of CHIPS and TPR grounds which open the door for the admissibility of evidence of postpetition conduct (e.g., see § 48.13(10m), § 48.13(3m), § 48.133, and § 48.415(2)). For these grounds, which contain an element that is predictive in nature (e.g., substantial risk of neglect), postpetition conduct may be relevant to the allegations of the petition.

*The Committee reaffirms its original position that the question of timing the jury's consideration of pre-petition and post-petition evidence must be resolved by the trial judge in the context of the jurisdictional ground at issue.*

(Emphasis added.)

jury trial during the grounds phase of this TPR proceeding.[8]  In so doing, we emphasize that we do not hold that postfiling evidence is always admissible in every abandonment TPR case; instead, we merely hold that postfiling evidence may be relevant and admissible in an abandonment case, such as the one presented here.

¶32    Our conclusion that the circuit court erroneously exercised its discretion does not end our review of this case.  We also must determine whether this error requires us to reverse the circuit court's order terminating T.F.'s parental rights to Allie.  WISCONSIN STAT. § 805.18(2) provides, in pertinent part:

> No judgment shall be reversed or set aside or new trial granted in any action or proceeding on the ground of ... error as to any matter of pleading or procedure, unless in the opinion of the court to which the application is made, after an examination of the entire action or proceeding, it shall appear that the error complained of has affected the substantial rights of the party seeking to reverse or set aside the judgment, or to secure a new trial.

¶33    To affect the substantial rights of a party, there must be a reasonable possibility that the error contributed to the outcome of the action or proceeding. *Evelyn C.R. v. Tykila S.*, 2001 WI 110, ¶28, 246 Wis. 2d 1, 629 N.W.2d 768.  A "reasonable possibility" is one that is sufficient to undermine the confidence in the outcome of the proceeding.  *State v. Patricia A.M.*, 176 Wis. 2d 542, 556, 500 N.W.2d 289 (1993).  "Thus, a reviewing court must look to the totality of [the]

---

[8] The Department makes no developed argument on appeal that even if the postfiling evidence is relevant under WIS. STAT. § 904.01, it should nonetheless still be excluded under WIS. STAT. § 904.03 for being unfairly prejudicial.  The Department, as the opponent of the admission of evidence on the ground of unfair prejudice, has the burden of showing that the danger of unfair prejudice substantially outweighs the probative value of the evidence.  *See State v. Schutte*, 2006 WI App 135, ¶51, 295 Wis. 2d 256, 720 N.W.2d 469.

record and determine whether the error contributed to the trial's outcome." *Id.* at 556-57. "If the error at issue is not sufficient to undermine the reviewing court's confidence in the outcome of the proceeding, the error is harmless." *Evelyn C.R.*, 246 Wis. 2d 1, ¶28.

¶34    Here, we determine the circuit court's evidentiary error affected T.F.'s substantial rights, as there is a reasonable probability that her inability to present the postfiling evidence contributed to the jury's decision that she failed to show good cause for failing to communicate with and visit Allie. As previously explained, T.F.'s inability to present the postfiling evidence limited the jury's ability to fully consider the merits of her argument that the Department stood in the way of her communicating with and visiting Allie during the abandonment period. The introduction of the postfiling evidence would have enhanced T.F.'s credibility in arguing her good cause defense because she would have been able to prove to the jury that she had face-to-face visits with Allie once the alleged unreasonable conditions were lifted and the Department provided the type of assistance it was purportedly required to provide to T.F. during the abandonment period. The clear inference she would be advancing is that she would have had such visits and communications during that period but for the Department's failings.

¶35    We therefore conclude the circuit court's error affected T.F.'s substantial rights.[9]  Accordingly, we reverse the order terminating T.F.'s parental

---

[9] We have determined that the circuit court erroneously exercised its discretion by excluding evidence that T.F. communicated with or visited Allie after the Department filed its TPR petition. As such, we need not address T.F.'s constitutional due process argument that she is entitled to a new trial because the improperly excluded evidence denied her the right to present admissible evidence central to her defense. *See Patrick Fur Farm, Inc.*, 286 Wis. 2d 774, ¶8 n.1.

rights to Allie and remand for a new trial at the grounds phase of these TPR proceedings consistent with this opinion.

*By the Court.*—Order reversed and cause remanded with directions.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.